JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Dominique Ellis | Liberty Mutual Insurance Company and Clare MacNabb |

| **(b)** County of Residence of First Listed Plaintiff   Philadelphia | County of Residence of First Listed Defendant   Boston, MA |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Gabriel Z. Levin, Esq./James T. Stinsman, Esq. | Cristin A. Cavanaugh, Esquire/William C. Foster, Esq. |
| Levin & Zeiger | Marshall Dennehey Warner Coleman and Goggin |
| 1500 JFK Blvd., Suite 620, Philadelphia, PA 19102 (215) 825-5183 | 2000 Market Street, Suite 2300, Philadelphia (215) 575-2597 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
      Plaintiff
- ☐ 2  U.S. Government
      Defendant
- ☐ 3  Federal Question
      *(U.S. Government Not a Party)*
- ☒ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332; 28 USC 1441 and 1446
Brief description of cause:
Breach of Contract, Bad Faith, Unfair Trade Practices and Consumer Protection Law

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   3/9/18

SIGNATURE OF ATTORNEY OF RECORD   *Cristin A. Cavanaugh*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | |
|---|---|
| **DOMINIQUE ELLIS** | : **CIVIL ACTION** |
| **v.** | : |
| **LIBERTY MUTUAL INSURANCE** | : |
| **COMPANY AND CLARE MACNABB** | : **NO.** |
| | : |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus-Cases brought under 28 U.S.C. §2241through §2255.                  ( )

(b) Social Security-Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                      ( )

(c) Arbitration-Cases require to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos-Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                              ( )

(e) Special Management-Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                 ( )

(f) Standard Management--Cases that do not fall into any one of the other tracks.   (x)

*Cristin A. Cavanaugh*

| | | |
|---|---|---|
| **3/9/18** | CRISTIN A. CAVANAUGH | DEFENDANT |
| Date | Attorney-at-law | Attorney for |

| | | |
|---|---|---|
| 215-575-2597 | 215-575-0856 | cacavanaugh@mdwcg.com |
| Telephone | FAX Number | E-Mail Address |

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)　　The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)　　In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management of Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)　　The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)　　Nothing in this Plan is intended to abrogate of limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)　　Nothing in this Plan is intended to supersede Local Civil Rules 3 or 7, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See § 1.02(e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions of potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA -- DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff     814 Passmore Street, Philadelphia, PA 19152

Address of Defendant     175 Berkeley Street, Boston, Massachusetts 02116

Place of Accident, Incident or Transaction     Philadelphia, PA

*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more if its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 8.1(a))     Yes ☒     No ☐

Does this case involve multidistrict litigation possibilities?     Yes ☐     No ☒
*RELATED CASE, IF ANY:*

Case Number: _____     Judge _____     Date Terminated _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.   Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

     Yes ☐     No ☒

2.   Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated

     action in this court?     Yes ☐     No ☒

3.   Does this case involve the validity or infringement of a patent already in suit or any earlier number case pending or within one year previously

     terminated action in this court?     Yes ☐     No ☒

CIVIL: (Place ✓ in ONE CATEGORY ONLY)

| A. | | *Federal Question Cases:* | | B. | | *Diversity Jurisdiction Cases* |
|----|----|----|----|----|----|----|
| 1. | ☐ | Indemnity Contract, Marine Contract, and All Other Contracts | | 1. | ☒ | Insurance Contract and Other Contracts |
| 2. | ☐ | FELA | | 2. | ☐ | Airplane Personal Injury |
| 3. | ☐ | Jones Act-Personal Injury | | 3. | ☐ | Assault, Defamation |
| 4. | ☐ | Antitrust | | 4. | ☐ | Marine Personal Injury |
| 5. | ☐ | Patent | | 5. | ☐ | Motor Vehicle Personal Injury |
| 6. | ☐ | Labor-Management Relations | | 6. | ☐ | Other Personal Injury (Please specify) |
| 7. | ☐ | Civil Rights | | 7. | ☐ | Products Liability |
| 8. | ☐ | Habeas Corpus | | 8. | ☐ | Products Liability -- Asbestos |
| 9. | ☐ | Securities Act(s) Cases | | 9. | ☐ | All other Diversity Cases |
| 10. | ☐ | Social Security Review Cases | | | | (Please specify) |
| 11. | ☐ | All other Federal Question Cases | | | | |
| | | (Please specify) | | | | |

# ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, _____ counsel of record do hereby certify:

☐   Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case

exceed the sum of $150,000.00 exclusive of interest and costs;

☐   Relief other than monetary damages is sought.

DATE _____     _____     _____
                          Attorney-at-Law            Attorney I.D. #

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court
except as noted above.

DATE   3|9|18     *Austin A. Carsanaugh*     307546
                   Attorney-at-Law                 Attorney I.D. #

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA – DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff    814 Passmore Street, Philadelphia, PA 19152

Address of Defendant    175 Berkeley Street, Boston, Massachusetts 02116

Place of Accident, Incident or Transaction    Philadelphia, PA
*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more if its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 8.1(a))      Yes ☒   No ☐

Does this case involve multidistrict litigation possibilities?      Yes ☐   No ☒
*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
    Yes ☐   No ☒

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
    Yes ☐   No ☒

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier number case pending or within one year previously terminated action in this court?
    Yes ☐   No ☒

---

CIVIL: (Place ✓ in ONE CATEGORY ONLY)

A.  *Federal Question Cases:*

1.  ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2.  ☐ FELA
3.  ☐ Jones Act-Personal Injury
4.  ☐ Antitrust
5.  ☐ Patent
6.  ☐ Labor-Management Relations
7.  ☐ Civil Rights
8.  ☐ Habeas Corpus
9.  ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B.  *Diversity Jurisdiction Cases*

1.  ☒ Insurance Contract and Other Contracts
2.  ☐ Airplane Personal Injury
3.  ☐ Assault, Defamation
4.  ☐ Marine Personal Injury
5.  ☐ Motor Vehicle Personal Injury
6.  ☐ Other Personal Injury (Please specify)
7.  ☐ Products Liability
8.  ☐ Products Liability – Asbestos
9.  ☐ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, _____ counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE _____   _____   _____
                    Attorney-at-Law          Attorney I.D. #

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE  3/9/18   *Cristen A. Cavanaugh*   307546
                    Attorney-at-Law          Attorney I.D. #

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DOMINIQUE ELLIS : CIVIL ACTION
:
          Plaintiffs :
:
         v. : NO.
:
LIBERTY MUTUAL INSURANCE :
COMPANY and CLARE MACNABB :
         Defendants :

------------------------------------------------------------------------

## DISCLOSURE STATEMENT FORM

| Please check one box: | | | |
|---|---|---|---|
| ☐ | The nongovernmental corporate parties, | | , in the |
| | above listed civil action do not have any parent corporation and publicly held corporation that owns 10% or more of its stock. | | |
| ☒ | The nongovernmental corporate party, | Liberty Mutual Insurance Company | , in the |
| | above listed civil action has the following parent corporation(s) and publicly held corporation(s) that own 10% or more of its stock. | | |
| | Liberty Mutual Holding Company Inc. owns 100% of the stock of LMHC Massachusetts Holdings Inc.  LMHC Massachusetts Holdings Inc. owns 100% of the stock of Liberty Mutual Group Inc.  Liberty Mutual Group Inc. owns 100% of the stock of Liberty Mutual Insurance Company | | |
| 3|9|18 Date | | *Austin A. Cavanaugh* Signature |
| | Counsel for: | *Defendant, Liberty Mutual Insurance Company* | |

## **CERTIFICATE OF SERVICE**

I, Cristin A. Cavanaugh, Esquire, hereby certify that a true and correct copy of the foregoing Disclosure Statement Form was served upon the following party via electronic Court filing, on the below date:

Gabriel Z. Levin, Esquire
James T. Stinsman, Esquire
Levin & Zeiger
1500 JFK Blvd.
Suite 620
Philadelphia, PA 19102
Attorneys for Plaintiff


MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN


_____
CRISTIN A. CAVANAUGH, ESQUIRE
*Attorneys for Defendant*


Dated: ____3|9|18_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DOMINIQUE ELLIS                 :      CIVIL ACTION

              Plaintiffs         :

                         :      NO.

         v.                  :

                         :

LIBERTY MUTUAL INSURANCE    :

COMPANY and CLARE MACNABB   :

           Defendants      :

## DISCLOSURE STATEMENT FORM

| Please check one box: | | | | |
|---|---|---|---|---|
| ☐ | The nongovernmental corporate parties, | | | , in the |
| | above listed civil action do not have any parent corporation and publicly held corporation that owns 10% or more of its stock. | | | |
| ☒ | The nongovernmental corporate party, | Liberty Mutual Insurance Company | | , in the |
| | above listed civil action has the following parent corporation(s) and publicly held corporation(s) that own 10% or more of its stock. | | | |
| | Liberty Mutual Holding Company Inc. owns 100% of the stock of LMHC Massachusetts Holdings Inc.  LMHC Massachusetts Holdings Inc. owns 100% of the stock of Liberty Mutual Group Inc.  Liberty Mutual Group Inc. owns 100% of the stock of Liberty Mutual Insurance Company | | | | |
| 3/9/18 <br> Date | | *Austin A. Cavanaugh* <br> Signature | | |
| | Counsel for: | *Defendant, Liberty Mutual Insurance Company* | | |

## CERTIFICATE OF SERVICE

I, Cristin A. Cavanaugh, Esquire, hereby certify that a true and correct copy of the foregoing Disclosure Statement Form was served upon the following party via electronic Court filing, on the below date:

Gabriel Z. Levin, Esquire
James T. Stinsman, Esquire
Levin & Zeiger
1500 JFK Blvd.
Suite 620
Philadelphia, PA 19102
Attorneys for Plaintiff

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

_Cristin A. Cavanaugh_
CRISTIN A. CAVANAUGH, ESQUIRE
*Attorneys for Defendant*

Dated: __3/9/18__

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DOMINIQUE ELLIS | : | CIVIL ACTION |
| | : | |
| Plaintiffs | : | |
| | : | NO. |
| v. | : | |
| | : | |
| LIBERTY MUTUAL INSURANCE | : | |
| COMPANY and CLARE MACNABB | : | |
| Defendants | : | |

**TO:   CLERK OF COURT OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Defendants, Liberty Mutual Insurance Company and Clare MacNabb, by their attorneys,

Marshall, Dennehey, Warner, Coleman & Goggin, hereby file Notice of Removal of this case

from the Court of Common Pleas of Philadelphia County, Pennsylvania, where it is now

pending, to the United States District Court for the Eastern District of Pennsylvania on the basis

of diversity jurisdiction, and in support thereof avers as follows:

1. Plaintiff commenced this action by Complaint filed on February 19, 2018, in the Court of

   Common Pleas of Philadelphia County, Pennsylvania, docketed as February Term 2018,

   No. 001417.  (A copy of the Complaint is attached hereto and marked as Exhibit "A").

2. The Complaint was served on Defendant on February 19, 2018.

3. The Complaint states that Plaintiff, Dominique Ellis, is a citizen of the Commonwealth of

   Pennsylvania, residing therein at 814 Passmore Street, Philadelphia, PA 19152.

   Therefore, upon information and belief, Plaintiff is a citizen of the Commonwealth of

   Pennsylvania.

4. Liberty Mutual Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

5. The Complaint was served on Defendant, Clare MacNabb c/o Liberty Mutual Insurance Company on February 21, 2018.

6. Defendant Clare MacNabb is a resident of the Commonwealth of Pennsylvania; however, Defendant avers that she has been fraudulently joined, and therefore, she must not be considered a party in interest for the purpose of determining diversity jurisdiction.

7. In Count I of the Complaint, Plaintiff alleges claims against Defendant, Liberty Mutual Insurance Company, for breach of contract by failure to pay underinsured motorist benefits.

8. In Count II of the Complaint, Plaintiff allege claims against Defendant, Liberty Mutual Insurance Company, for bad faith pursuant to 42 Pa.C.S.A. §8371.

9. In Count III of the Complaint, Plaintiff alleges claims against Defendants, Liberty Mutual Insurance Company and Clare MacNabb, for violation of the provisions of the Unfair Trade Practices and Consumer Protection Law ("UTPCL"), 73 P.S. § 201-1 et seq.

10. Based upon the allegations of Plaintiff's Complaint, the amount in controversy in this action is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest, as Plaintiffs have alleged damages in excess of $50,000.00 for each Count in the Complaint. Plaintiffs also alleged allegations of bad faith pursuant to 42 Pa.C.S.A. §8371, including punitive damages.

11. As such, the above described civil action is one in which this Honorable Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1332 based upon the fact that there

exists diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

12. Although Clare MacNabb is a citizen of the Commonwealth of Pennsylvania, Defendants aver Ms. MacNabb has been fraudulently joined.

13. Plaintiff's Complaint fails to state a reasonable basis in fact supporting a cause of action against Defendant Clare MacNabb and it fails to state a colorable claim under Pennsylvania law, and therefore, Ms. MacNabb has been "fraudulently joined" as a party. See e.g. Abels v. State Farm Fire & Cas. Co., 770 F.2d 26 (3d Cir. Pa. 1985); Allegrino v. Conway E&S, Inc., 2010 U.S. Dist. LEXIS 40732, Civ. A. No. 09-1507 (W.D. Pa. Apr. 26, 2010).

14. The purpose of the Pennsylvania Uniform Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et seq. is "to protect consumers from 'fraud and unfair or deceptive business practices.'" Norco v. Allstate Ins. Co., 2012 U.S. Dist. LEXIS 128343, * 32 (W.D. Pa. July 12, 2012)(Commw. ex. rel. Corbett v. Peoples Benefit Servs., Inc., 923 A.2d 1230, 1236 (Pa. Commw. Ct. 2007).

15. The Pennsylvania Legislature included in the UTPCPL a private right of action for "[a]ny person who purchases . . . goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, defined as "[u]nfair methods of competition and unfair or deceptive acts or practice in the conduct of any trade or commerce as defined by subclause (i) through (xxi) of [73 P.S. § 201-2(4)] . . . " 73 P.S. §201-3.

16. To maintain a private right of action under the UTPCPL, a plaintiff must demonstrate (1) ascertainable loss of money or property, real or personal, 73 Pa.Stat. Ann. § 201-9.2(a), (2) as a result of defendant's prohibited conduct under the statute." <u>Kaymark v. Bank of Am., N.A.</u>, 783 F.3d 168, 180 (3d Cir. 2015).  Pennsylvania courts have interpreted Section 201.9(a)'s language as implying a requirement that the plaintiff demonstrate justifiable reliance on the defendant's deceptive or fraudulent conduct.  <u>See</u> <u>Hunt v. U.S. Tobacco Co.</u>, 538 F.3d 217, 222-23 (3d Cir. 2008) ("The Supreme Court of Pennsylvania has consistently interpreted the Consumer Protection Law's private-plaintiff standing provision's causation requirement to demand a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm.").

17. "General allegations that defendant engaged in deceptive conduct without specifying what the deceptive conduct actually was are insufficient; a plaintiff must identify the specific act, omission or misrepresentation 'in order to demonstrate that such confusion or misunderstanding was caused by certain acts or omissions on the part of the Defendants." <u>Doherty v. Allstate Indem. Co.</u>, No. CV 15-05165, 2016 U.S. Dist. LEXIS 132027 (E.D. Pa. 2016).

18. In claims involving insurance policies, the court of appeals has explained that "[i]n Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCL], and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable." <u>Gardner v. State Farm Fire & Case. Co.</u>, 544 F.3d 553, 564 (3d Cir. 2008).

19. Court's agree an insurer's "[f]ailure to pay under an insurance contract constitutes nonfeasance," and is accordingly not actionable under the Unfair Trade Practices Law.

MacFarland v. U.S. Fid. & Guar. Co., 818 F. Supp. 108, 111 (E.D. Pa. 1993) (citing

Gordon v. Pennsylvania Blue Shield, 548 A.2d 600, 604 (Pa. Super. 1988)).

20. Plaintiff have proffered only general allegations that Defendant, Clare MacNabb, violated

the Unfair Trade Practices and Consumer Protection Law (UTPCPL).

21. As Ms. MacNabb was fraudulently joined, diversity jurisdiction exists.

22. The present lawsuit is accordingly removable from the state court to this Honorable Court

pursuant to 28 U.S.C. §§ 1441 and 1446.

23. This Notice of Removal has been filed within thirty (30) days after receipt by Defendants

of the Complaint in accordance with 28 U.S.C. § 1446(b).

24. Copies of all process, pleadings and other Orders which have been received by

Defendants in this action are filed herewith.

WHEREFORE, Defendants, Liberty Mutual Insurance Company and Clare MacNabb

respectfully requests that it may affect the removal of this action from the Court of Common

Pleas of Philadelphia County, Pennsylvania to the United States District Court for the Eastern

District of Pennsylvania.

Respectfully submitted,

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

By: _Cristin A. Cavanaugh_____
    WILLIAM C. FOSTER, ESQUIRE
    CRISTIN A. CAVANAUGH, ESQUIRE
    PA Attorney ID Nos. 03511/307546
    2000 Market Street, Suite 2300
    Philadelphia, PA 19103
    215-575-2597; 215-575-0856 (fax)
    wcfoster@mdwcg.com
    cacavanaugh@mdwcg.com
    Attorneys for Defendant

Dated: _3/9/18__

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DOMINIQUE ELLIS | : | CIVIL ACTION |
| | : | |
| Plaintiffs | : | |
| | : | NO. |
| v. | : | |
| | : | |
| LIBERTY MUTUAL INSURANCE | : | |
| COMPANY and CLARE MACNABB | : | |
| Defendants | : | |

CERTIFICATION

I, Cristin A. Cavanaugh, Esquire, hereby certify that the facts set forth in the foregoing

Notice of Removal are true and correct to the best of my knowledge, information and belief.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

By: _Cristin A. Cavanaugh_
    WILLIAM C. FOSTER, ESQUIRE
    CRISTIN A. CAVANAUGH, ESQUIRE
    PA Attorney ID Nos. 03511/307546
    2000 Market Street, Suite 2300
    Philadelphia, PA 19103
    215-575-2597; 215-575-0856 (fax)
    wcfoster@mdwcg.com
    cacavanaugh@mdwcg.com
    Attorneys for Defendant

Dated: _3/9/18_

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DOMINIQUE ELLIS                    :    CIVIL ACTION
                                   :
                 Plaintiffs        :
                                   :    NO.
          v.                       :
                                   :
LIBERTY MUTUAL INSURANCE           :
COMPANY and CLARE MACNABB          :
          Defendants               :

---

### CERTIFICATE OF SERVICE

I, Cristin A. Cavanaugh, Esquire, hereby certify that a true and correct copy of the

foregoing Notice of Removal was served upon the following party via electronic service, on the

below date:

> Gabriel Z. Levin, Esquire
> James T. Stinsman, Esquire
> Levin & Zeiger
> 1500 JFK Blvd.
> Suite 620
> Philadelphia, PA 19102
> Attorneys for Plaintiff

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

By: _Cristin A. Cavanaugh_
       CRISTIN A. CAVANAUGH, ESQUIRE
       Attorneys for Defendant

Dated: _3/9/18_

# EXHIBIT A

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

FEBRUARY 2018   001417

Filing Number: 1802003546

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| DOMINIQUE ELLIS | LIBERTY MUTUAL GENERAL INSURANCE COMPANY |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| 814 PASSMORE STREET PHILADELPHIA PA 19152 | 175 BERKELEY STREET BOSTON MA 02116 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|  | CLARE MACNABB |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|  | 512 TOWNSHIP LINE ROAD SUITE 3 BLUE BELL PA 19422 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|  |  |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|  |  |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 2 | ☒ Complaint    ☐ Petition Action    ☐ Notice of Appeal ☒ Writ of Summons    ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less ☒ More than $50,000.00 | ☐ Arbitration ☒ Jury ☐ Non-Jury ☐ Other: | ☐ Mass Tort ☐ Savings Action ☐ Petition | ☐ Commerce ☐ Minor Court Appeal ☒ Statutory Appeals | ☐ Settlement ☐ Minors ☐ W/D/Survival |

| CASE TYPE AND CODE |
|---|
| 1J - BAD FAITH |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
|  |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| FILED PRO PROTHY FEB 15 2018 C. MILLER | YES    NO |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: DOMINIQUE ELLIS

Papers may be served at the address set forth below.

H.O. LEGAL DI

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| GABRIEL Z. LEVIN | LEVIN & ZEIGER LLP TWO PENN CENTER 1500 JFK BLVD STE 620 PHILADELPHIA PA 19102 |
| PHONE NUMBER          FAX NUMBER | |
| (215)825-5183      (215)279-8702 | |
| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
| 89128 | levin@levinzeiger.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
| GABRIEL LEVIN | Thursday, February 15, 2018, 03:24 pm |

FEB 19 2018

RECEIVED

FINAL COPY (Approved by the Prothonotary Clerk)

LEVIN & ZEIGER
BY GABRIEL Z. LEVIN
LEVIN@LEVINZEIGER.COM
IDENTIFICATION NO: 89128
JAMES T. STINSMAN, ESQUIRE
IDENTIFICATION NO: 312191
1500 JFK BLVD.
SUITE 620
PHILADELPHIA, PA 19102
215-825-5183

ATTORNEY FOR PLAINTIFF



JURY TRIAL DEMANDED

---

DOMINIQUE ELLIS                          :     COURT OF COMMON PLEAS
814 PASSMORE STREET                      :
PHILADELPHIA, PA 19152                   :     PHILADELPHIA COUNTY
                                         :
                 PLAINTIFF,              :     FEBRUARY TERM 2018
                                         :     NO.
        v.                               :
                                         :
LIBERTY MUTUAL GENERAL                   :
INSURANCE COMPANY                        :
175 BERKELEY STREET                      :
BOSTON, MA 02116                         :
                                         :
        and                              :
                                         :
CLARE MACNABB                            :
512 TOWNSHIP LINE ROAD                   :
SUITE 300                                :
BLUE BELL, PA 19422                      :
                                         :
                 DEFENDANTS.             :
                                         :

---

1

## NOTICE TO DEFEND

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION

Lawyer Referral and Information Service

1101 Market Street, 11th Floor

Philadelphia, Pennsylvania 19107

(215) 238-1701

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATA-MENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA

Servicio De Referencia E Información Legal

1101 Market Street, 11th Floor

Filadelfia, Pennsylvania 19107

(215) 238-1701

2

LEVIN & ZEIGER                                    ATTORNEY FOR PLAINTIFF
BY GABRIEL Z. LEVIN
LEVIN@LEVINZEIGER.COM
IDENTIFICATION NO: 89128
JAMES T. STINSMAN, ESQUIRE
IDENTIFICATION NO: 312191
1500 JFK BLVD.
SUITE 620                                        JURY TRIAL DEMANDED
PHILADELPHIA, PA 19102
215-825-5183

---

DOMINIQUE ELLIS                        :         COURT OF COMMON PLEAS
814 PASSMORE STREET                    :
PHILADELPHIA, PA 19152                 :         PHILADELPHIA COUNTY
                                       :
                PLAINTIFF,             :         FEBRUARY TERM 2018
                                       :         NO.
        v.                             :
                                       :
LIBERTY MUTUAL                         :
INSURANCE COMPANY                      :
175 BERKELEY STREET, STE 10-B          :
BOSTON, MA 02116                       :
                                       :
        and                            :
                                       :
CLARE MACNABB                          :
512 TOWNSHIP LINE ROAD                 :
SUITE 300                              :
BLUE BELL, PA 19422                    :
                                       :
                DEFENDANTS.            :

---

## CIVIL ACTION – COMPLAINT

Plaintiff, Dominique Ellis, by and through undersigned counsel, files the within

Complaint and in support thereof avers the following:

3

Case ID: 180201417

## PARTIES

1.      Plaintiff Dominique Ellis is an individual residing at 814 Passmore Street, Philadelphia, PA 19111.

2.      Plaintiff Dominique Ellis is an individual who at all times material to this action was a citizen and resident of the Commonwealth of Pennsylvania.

3.      Defendant Liberty Mutual Insurance Company ("Liberty") is a corporation organized and existing under the laws of Illinois, with its principal place of business at 175 Berkeley Street, suite 10-B, Boston, MA 02117, being duly authorized to and conducting business in Pennsylvania.

4.      Defendant Liberty regularly and routinely conducts business in the City and County of Philadelphia.

5.      Defendant Clare MacNabb is an adult individual employed by Defendant Liberty, in the Claims Department, who is assigned to and handled the claim of Plaintiff.

6.      At all times material hereto, Defendant MacNabb acted as the agent, servant, workman, and employee of Defendant Liberty, in the course and scope of her employment.

7.      At all times material hereto, Defendant MacNabb was and is a citizen and resident of the Commonwealth of Pennsylvania.

## VENUE

8.      The venue is proper in this Court because this action arises out of an Insurance Policy indicating that venue is proper in the County of Plaintiff's domicile at the time of the accident, which was Philadelphia.

9.      The venue is also proper in this Court because Defendant Liberty regularly conducts business in Philadelphia.

4

## FACTUAL ALLEGATIONS

10.     This action arises out of a motor vehicle versus pedestrian collision that took place on January 15, 2016.

11.     Plaintiff was a pedestrian on the 8200 Block of Henry Avenue in Philadelphia.

12.     Plaintiff was stationary in the middle of a non-drivable lane when the tortfeasor, Timothy Murray, pulled out of a driveway, crossed the double yellow line to make a left turn onto Henry Avenue, and struck Plaintiff who was standing still in the non-drivable lane.

13.     Plaintiff was knocked unconscious and thrown to the ground.

14.     Plaintiff was taken via EMS to Einstein Hospital for injuries to her face, neck, back, shoulder, and hip.

15.     The accident was caused by the carelessness and negligence of the tortfeasor, for that among other acts and omissions the tortfeasor:

     a.  struck Plaintiff with his vehicle;

     b.  entered the roadway before it was safe to do so;

     c.  failed to look both ways before entering the roadway;

     d.  operated the motor vehicle at a dangerous and excessive rate of speed under the circumstances then and there existing;

     e.  failed to reduce speed to avoid a collision;

     f.  failed to observe due care and precaution and to maintain proper and adequate control of the motor vehicle;

     g.  failed to keep a proper lookout for other persons upon the roadway;

     h.  failed to exercise reasonable care in the operation of the motor vehicle under the circumstances then and there existing; and

5

           i.   failed to yield to pedestrians.

16.     The tortfeasor owed Plaintiff a duty to exercise reasonable care in the operation of the vehicle and violated that duty with his actions and omissions, proximately causing injury to Plaintiff. As a direct and proximate result of Defendant's negligence, Plaintiff suffered serious injuries, both physical and emotional, and continues to do so.

17.     As a direct and proximate result of the tortfeasor's negligence, Plaintiff suffered bodily injuries and endured physical and mental pain and suffering, including but not limited to, a loss of consciousness, right sided facial abrasions, fractures of the right side zygomatic arch, diastases of the suture within the lateral wall of the right orbit, straightening of normal cervical lordosis, concussion, postconcussive syndrome, migraines, headaches, tinnitus, loss of hearing, sprains of the left knee, right wrist, right shoulder, and cervical, thoracic and lumbar spine.

18.     As a direct and proximate result of the tortfeasor's negligence, Plaintiff suffered embarrassment and humiliation as a result of her injuries.

19.     As a direct and proximate result of the tortfeasor's negligence, Plaintiff suffered a loss of the ability to enjoy the pleasures of life.

20.     As a further direct and proximate result of the tortfeasor's negligence, Plaintiff has suffered financial loss in the form of lost wages and medical expenses in excess of the basic personal injury protection benefits required by the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. Section 1701 et. seq.

21.     On January 15, 2016 and before, Defendant Liberty was duly qualified to conduct and transact business within the Commonwealth of Pennsylvania and was empowered to execute insurance policies within the general characteristics described hereinafter.

6

22.     At the time of the collision, Defendant Liberty provided coverage for Plaintiff in accordance with the Motor Vehicle Financial Responsibility Laws of Pennsylvania (75 Pa. C.S. Section 1702, et. seq.) through policy number AOS28849378040, which was in full force and effect on the date of the collision. **See Exhibit A attached.**

23.     Plaintiff maintained auto insurance with Defendant Liberty in reliance to claims made in advertisements.

24.     Defendant Liberty's advertisements included slogans of "Responsibility, What's your policy"; "See Car Insurance in a Whole New Light"; and "Liberty Stands With You."

25.     According to Anthony Storm, senior vice President and Chief Marketing Officer of Defendant Liberty, "Liberty Mutual helps people live safer, more secure lives, and we want these ads to reflect our commitment to taking care of our customers."

26.     Plaintiff relied upon these ads which were intended to reflect Defendant Liberty's "commitment to taking care of our customers," when maintaining underinsured motorist benefits with Defendant Liberty.

27.     The terms of Defendant Liberty's policy provided $100,000 per person and $300,000 per accident of underinsured motorist coverage with stacking on two vehicles for a total of $200,000 per person and $600,000 per accident of underinsured motorist coverage.

28.     On March 7, 2016, Plaintiff filed a civil action against the tortfeasor Murray in the Philadelphia County Court of Common Pleas, under docket number 160300111.

29.     Around the same time, Plaintiff opened a first party PIP claim with Defendant Liberty under policy number AOS28849378040.

30.     Defendant Liberty paid the first $5,000 of Plaintiff's medical bills resulting from this collision.

7

31.    On March 24, 2016, Defendant Liberty, through their agents, servants, employees and workmen, informed Plaintiff, via letter, that the $5,000 PIP Medical Expense benefits had been fully exhausted.

32.    At the time of the collision, tortfeasor Murray was covered by a GEICO automobile insurance policy with only $100,000 of coverage.

33.    The $100,000 coverage of tortfeasor Murray was insufficient to fairly and adequately compensate Plaintiff for her damages resulting from the collision.

34.    Tortfeasor Murray was and is underinsured for the events of January 15, 2016.

35.    In March 2017, Plaintiff's counsel notified Defendant Liberty of its intention to settle with tortfeasor and to make a claim for Plaintiff's underinsured motorist benefits.

36.    Upon information and belief, at some point shortly thereafter, Defendant MacNabb was assigned by Defendant Liberty to be Plaintiff's underinsured motorist claims adjuster.

37.    On March 17, 2017, Defendant MacNabb acknowledged by letter, that Defendant Liberty had begun investigating the underinsured motorist claim. **See Exhibit B attached.**

38.    On April 12, 2017, Defendant MacNabb gave Plaintiff authority to settle with tortfeasor Murray. **See Exhibit C attached.**

39.    On April 18, 2017, Plaintiff's counsel provided Defendant MacNabb with a copy of Plaintiff's medical records related to her injuries sustained in the collision.

40.    In May 2017, tortfeasor Murray's insurance company, GEICO, settled the matter with Plaintiff for an amount with in the policy limits.

41.    In a June 6, 2017 letter, Defendant MacNabb, on behalf of Defendant Liberty, informed Plaintiff that Defendant Liberty was making a "reservation of rights" on the availability of the underinsured motorist benefits. **See Exhibit D attached.**

8

42.   The reservation letter claimed that "the policy may not afford you the legal protection of coverage that you assumed when the claim was reported."

43.   The stated reason for the reservation was "because our investigation to date indicates that you had an apartment at 8200 Henry Avenue, Philadelphia, PA."

44.   Plaintiff, through undersigned counsel, explained to Defendant MacNabb that Plaintiff never resided at the 8200 Henry Avenue.

45.   Plaintiff, through undersigned counsel, explained to Defendant MacNabb that Plaintiff merely co-signed a lease for her boyfriend at the property due to the boyfriend's insufficient credit score.

46.   Despite Plaintiff providing evidence establishing that her residence at all times relevant to this Action was 814 Passmore Street, Defendant Liberty continued to delay and deny the claim on this basis.

47.   In June 2017, Plaintiff's undersigned counsel was contacted by staff members of Defendant Liberty's legal office, explaining that Defendant MacNabb, on behalf of Defendant Liberty, demanded that Plaintiff undergo an Examination Under Oath.

48.   On June 22, 2017, Attorney Daniel J. Maher, an employee of the Staff Legal Office of Defendant Liberty, on behalf of Defendants MacNabb and Liberty, served by letter a Notice for an Examination Under Oath of Plaintiff to take place on August 18, 2017, despite Plaintiff's undersigned counsel explaining that Plaintiff had earlier availability.

49.   The Examination Under Oath was rescheduled for August 31, 2017.

50.   Upon information and belief, Defendants Liberty and MacNabb did not take any investigatory steps to verify the true address of Plaintiff from the time the issuance of the

9

Case ID: 180201417

Reservation of Rights on June 6, 2017 and the eventual Examination Under Oath on August 31, 2017.

51.  On August 31, 2017, Attorney Maher, on behalf of Defendants MacNabb and Liberty questioned Plaintiff under oath.

52.  During the statement, Plaintiff also testified that she was still experiencing a loss of hearing since the time of the collision.

53.  Plaintiff explained, as counsel had done on her behalf in June, that she never resided at the apartment on Henry Avenue, but simply co-signed a lease for her boyfriend.

54.  Plaintiff explained, as counsel had done on her behalf in June, that she resided at the Passmore Street address at all times relevant to this Action.

55.  Upon information and belief, during the months of September and October 2017, Defendants Liberty and MacNabb did not take any investigatory steps to verify the true address of Plaintiff.

56.  During the months of September and October 2017 Defendants Liberty and MacNabb failed to communicate with Plaintiff or Plaintiff's counsel the results of their investigation and what position they were taking regarding the availability of underinsured motorist benefits.

57.  After repeated attempts by Plaintiff's counsel to learn of Defendants Liberty and MacNabb's determination regarding the availability of underinsured motorist benefits, Attorney Maher responded to Plaintiff's counsel by email on November 27, 2017. Attorney Maher stated that "the adjuster [MacNabb] was out last week. We are supposed to talk tomorrow and one of us will give you a call. Thanks for your patience[.]" **See Exhibit E attached.**

58.  On November 28, 2017, Attorney Maher wrote Plaintiff's counsel by email and stated, "Clare [MacNabb] is looking for a copy of her driver's license from the [date of accident]

Case ID: 180201417

and if you have any credit card bills to see where they were going at the time of the [accident]."
See Exhibit E.

59.     On November 29, 2017, Plaintiff's counsel responded by email to Attorney Maher, providing a copy of her license, showing the Passmore Street address. Plaintiff's counsel stated "I know I don't have to remind you that Liberty Mutual is obligated to act in good faith and has a duty to not treat Ms. Ellis as an adversary. If Liberty Mutual does not want to extend coverage I will proceed with litigation and pursue every remedy available to Ms. Ellis including a claim for bad faith and punitive damages." See Exhibit E.

60.     On November 30, 2017, Attorney Maher responded to Plaintiff's counsel by email, stating, "they are extending UIM coverage in this case. Clare [MacNabb] will be in touch next week to discuss." See Exhibit E.

61.     On December 7, 2017, Defendant MacNabb called Plaintiff's counsel and stated that she had determined that the value of Plaintiff's injuries did not exceed the tortfeasor's $100,000 insurance limit, and thus Defendant Liberty would not make any monetary offer on Plaintiff's underinsured motorist claim.

62.     Defendant MacNabb wrote a letter to Plaintiff's counsel on December 7, 2017, stating in part, "I have completed the evaluation of your client's Underinsured Motorist claim. With the information that I have to date, I do not have the value of the claim over the tortfeasor's limits. Therefore, I will not be able to make any offer under the Underinsured Motorist coverage." See Exhibit F attached.

63.     Prior to December 7, 2017, Defendants Liberty and MacNabb never informed Plaintiff or Plaintiff's counsel that Defendants value of Plaintiff's claim did not exceed the tortfeasor's policy, despite having all of the pertinent records for more than six months.

11

64. Defendant MacNabb has been employed by Defendant Liberty since 2004 as a Senior Claims Specialist I.

65. Throughout the duration of Defendant MacNabb's employment with Defendant Liberty, Defendant MacNabb has been assigned specifically to handle underinsured and uninsured motorist claims.

66. Throughout the duration of Defendant MacNabb's employment with Defendant Liberty, upon information and belief, Liberty Mutual did not maintain any manuals, protocols, directives, or written policies for claims handlers to follow when evaluating the value of an injury claim in the underinsured motorist setting.

67. Defendant Liberty, instead, solely relied on the experience of claims handlers, such as Defendant MacNabb, in order to determine the value of an injury claim in the underinsured motorist setting.

68. Throughout the duration of Defendant MacNabb's employment with Defendant Liberty, Defendant Liberty failed to implement any type of uniformed system of claims and injury valuation in the underinsured and uninsured claims setting.

69. Upon information and belief, Defendant MacNabb was given little oversight or supervision by Defendant Liberty in her valuations of injury claims in the underinsured motorist setting.

70. Upon information and belief, Defendant Liberty restricted Defendant MacNabb's settlement authority at $30,000 per underinsured motorist claim.

71. Upon information and belief, Defendant MacNabb was only required to bring a claim to a supervisor if Defendant MacNabb valued the claim in excess of $30,000.

12

72.     Upon information and belief, Defendant Liberty incentivized claims handlers, such as Defendant MacNabb to undervalue injury claims by creating less work and less supervision, so long as the value of a claim does not exceed the imposed claims handler's restricted authority.

73.     Defendant Liberty, before being presented with Plaintiff's underinsured motorist claim, had knowledge that Defendant MacNabb had a history of undervaluing injury claims in the underinsured and unisured motorist settings.

74.     Defendant Liberty, before being presented with Plaintiff's underinsured motorist claim, has been sued and settled claims of bad faith stemming from Defendant MacNabb's handling and undervaluing the injuries of underinsured and uninsured motorist claimants.

75.     In Michael Brown v. Liberty Mutual Fire Insurance, brought in the Eastern District of Pennsylvania, docket number 14-CV-2945, the plaintiff brought claims for uninsured motorists benefits and bad faith, alleging Defendant MacNabb grossly undervalued that plaintiff's injury claims.

76.     In Jane Dolan v. Liberty Mutual Insurance, brought in the Eastern District of Pennsylvania, docket number 2:16-CV-03342, the plaintiff brought claims for underinsured motorists benefits and bad faith, alleging Defendant MacNabb grossly undervalued that plaintiff's injury claims.

77.     Upon information and belief, before being presented with Plaintiff's claim, Defendant Liberty maintained a culture, practice, and procedure amongst its underinsured and uninsured claims handlers in the Blue Bell, PA office of unreasonably undervaluing plaintiffs' injury claims, and continue to do so.

78.     Specifically, Defendant Liberty, before being presented with Plaintiff's underinsured motorist claim, has been sued and settled claims of bad faith stemming from Defendant Liberty's

13

underinsured and uninsured claims handlers in the Blue Bell, PA office stemming from claims handlers'—including but not limited to Anne Palmer, Stephanie DeRosa, Rosaleen Murphy—undervaluing the injuries of underinsured and uninsured motorist claimants. See e.g., Jameson v. Liberty Mutual General Insurance Co., Eastern Dist. of Pennsylvania, Docket number, 2:14-cv-07074; James Sweeney v. Liberty Mutual Insurance Co., Phila. CCP docket no. 150903172; Ivey v. Liberty Mutual, Chester County, January Term, 2015, docket no. 00170-CT.

### COUNT I
### UNDERINSURED MOTORIST CLAIM
### PLAINTIFF v. DEFENDANT LIBERTY

79.     The allegations set forth in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

80.     Upon information and belief, the tortfeasor's liability insurance coverage for this action provides an insufficient amount of monies to fairly and adequately compensate Plaintiff for her injuries and damages.

81.     At the time of the collision, Plaintiff was an insured under the Liberty Policy as indicated above, which provides coverage for injuries caused by underinsured motorist.

82.     The tortfeasor qualifies as an underinsured motorist under the policy, as the injuries sustained exceed the policy limits of the tortfeasor's coverage.

83.     Under the law of the Commonwealth, Defendant Liberty stands in the shoes of the tortfeasor and is obligated to pay underinsured motorist benefits to Plaintiff for all harms inflicted by the underinsured motorist as outlined above.

**WHEREFORE**, Plaintiff requests the following in a sum greater than fifty thousand dollars ($50,000) each, plus costs and delay damages, and all other appropriate relief, to wit:

     a.   Compensatory damages; and

14

b.   Such other and further relief as appears reasonable and just.

## COUNT II
## BAD FAITH
## PLAINTIFF v. DEFENDANT LIBERTY

84.   The allegations set forth in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

85.   The Liberty Policy identified above provides Plaintiff with underinsured motorist benefits.

86.   Defendant Liberty is obligated to pay for all damages above the tortfeasor's policy caused by the tortfeasor in the January 15, 2016 collision.

87.   Defendant Liberty has systematically enforced and cultivated a culture amongst claims handlers, such as Defendant MacNabb, that treats first-party claims of their insureds in the same manner as those brought by adversary third-parties, and thus putting its own interests above its insureds.

88.   Defendant Liberty has systematically failed to provide written policies regarding how claims handlers, such as Defendant MacNabb, must fulfill the implied duties of good faith and fair dealings owed to injured insureds in the underinsured setting.

89.   Defendant Liberty has systematically failed to properly train and advise claims handlers, such as Defendant MacNabb, how to fulfill the implied duties of good faith and fair dealings owed to injured insureds in the underinsured settings.

90.   Defendant Liberty, by and through Defendant MacNabb, has wrongfully, wantonly, and willfully refused to make any payments for the underinsured motorist benefits.

Case ID: 180201417

91.    Defendant Liberty, by and through Defendant MacNabb, has acted wantonly, willfully, and maliciously in conducting an unnecessary, unfair, and unreasonable investigation of Plaintiff's address.

92.    Defendant Liberty, by and through Defendant MacNabb, acted wantonly, willfully, and maliciously in order to unreasonably and unjustly delay the handling and evaluation of Plaintiff's underinsured motorist claim for months, without any reasonable basis for doing so, despite being presented—repeatedly—with evidence refuting the grounds for delaying the claim.

93.    Defendant Liberty, by and through Defendant MacNabb, unreasonably ignored substantial evidence discrediting its position for delaying the handling of the claim.

94.    Defendant Liberty, by and through Defendant MacNabb, acted wantonly, willfully, and maliciously in order to unreasonably and unjustly deny Plaintiff's underinsured motorist claim after unjustly delaying the review of the same.

95.    Defendant Liberty failed to comply with the implied covenant of good faith and fair dealing of the policy.

96.    Defendant Liberty's duty of good faith and fair dealing was and is a vital obligation during the entire management of the claim, and was repeatedly and continuously breached by Defendants Liberty and MacNabb's actions and omissions.

97.    Defendant Liberty breached the common law duty of good faith and fair dealing in the handling of the underinsured motorist claim of Plaintiff.

98.    Defendant Liberty is liable for all common law bad faith damages.

99.    Defendant Liberty also breached the statutory duties of good faith and fair dealings imposed by 42 Pa. C.S.A. § 8371.

16

Case ID: 180201417

100.    Defendant Liberty is liable for all statutory bad faith damages including interest,
counsel fees, costs, and punitive damages.

101.    Defendant Liberty acted in bad faith by:

a.  Failing to promptly and reasonably determine the applicability of the
underinsured motorist benefits, without unjust, unreasonable delay;

b.  Failing to promptly and reasonably consider obvious and irrefutable evidence
establishing that Plaintiff resided at 814 Passmore Street;

c.  Unreasonably delaying the evaluation of Plaintiff's underinsured motorist claim
for more than six months;

d.  Unreasonably delaying and denying any payment of underinsured motorist
benefits to Plaintiff when it was obvious that payments were warranted under the
circumstances;

e.  Failing to make any offer to settle, thereby compelling Plaintiff to institute
litigation and incur additional costs to recover those benefits rightly due to
Plaintiff;

f.  Unreasonably requiring Plaintiff and her counsel to needlessly expend additional
time, expense, and effort in order to establish the obvious—that Plaintiff resided
at 814 Passmore Street—only for Defendants to claim more than six months later
that Plaintiff's injuries did not breach the tortfeasor's policy limits, where such
additional time, expense, and effort would not have been necessary had Defendant
Liberty acted in good faith toward Plaintiff;

g.  Failing to pay Plaintiffs' underinsured motorist benefits in a timely manner
without a reasonable foundation to delay and deny the same;

17

h.  Failing to properly train employees on treating insureds in good faith;

i.  Failing to properly supervise employees, including Defendant MacNabb;

j.  Allowing Defendant MacNabb to evaluate claims and value injuries solely based on her experience, without any written guidelines;

k.  Allowing Defendant MacNabb to subjectively and independently decide what injuries warrant a specific value, without any oversight, guidelines, or supervisory input, so long as Defendant's MacNabb's valuation is sufficiently low;

l.  Failing to properly adopt protocols, procedures, and guidelines to ensure that all insureds, including Plaintiff, in the underinsured and uninsured claims setting are treated in good faith;

m.  Failing to properly adopt reasonable protocols, procedures, and guidelines for claims handlers in the underinsured and uninsured claims setting to follow to ensure that reasonable valuations are placed on claimant's injuries;

n.  Allowing Defendant MacNabb to be unaware of protocols, procedures, and guidelines for evaluation of underinsured and uninsured claimants' injuries.

o.  Allowing to exist a culture, practice, and procedure amongst its underinsured and uninsured claims handlers in the Blue Bell, PA office, of unreasonably undervaluing plaintiffs' injury claims.

p.  Allowing to exist a culture, practice, and procedure where the value of an insured's underinsured or uninsured motorist claim arbitrarily hinges on the subjective "experience" of the claims handler who happens to be assigned to the claim;

**18**

q. Creating, devising, and encouraging a practice of unreasonable and unfair evaluation and negotiation of claims;

r. Failing to attempt in good faith and fair dealing to effectuate a prompt, fair, and equitable settlement of Plaintiff's underinsured motorist claim, but instead placing its own interest ahead of Plaintiff's; and

s. Violating the Unfair Insurance Practices Act, 40 P.S. § 1171.1 et seq. and the Unfair Claims Settlement Practice Guidelines 31 Pa. Code § 146.1 et seq.

102.    As a result of Defendant's bad faith, Plaintiff is entitled to recover interest on the entire amount of underinsured motorist damages equal to the prime rate of interest plus three percent; punitive damages; and reasonable attorney fees and Court costs incurred by Plaintiff in prosecuting this action, and hereby makes a claim for the same.

**WHEREFORE**, Plaintiff requests the following in a sum greater than fifty thousand dollars ($50,000) each, plus costs and delay damages, and all other appropriate relief, to wit:

a. Compensatory damages; and

b. Such other and further relief as appears reasonable and just in accordance with law including interest, punitive damages, and counsel fees.

## COUNT III
## UNFAIR TRADE PRACTICES
## PLAINTIFF v.  DEFENDANTS LIBERTY & MACNABB

103.    The allegations set forth in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

104.    Defendants Liberty and MacNabb violated the terms and provisions of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 et seq., by reason

19

Case ID: 180201417

of Defendants' failure to properly handle, adjust, evaluate, and pay Plaintiff's underinsured motorist claim.

105.     Defendants Liberty and MacNabb violated UTPCPL by unreasonably and unfairly investigating and handling Plaintiff's underinsured motorist claim in a manner designed to delay, harass, intimidate, and deceive Plaintiff.

106.     Defendants Liberty and/or MacNabb violated UTPCPL by:

    a.   Representing that services where of a particular standard and quality, while they were of another;

    b.   Failing to comply with written guarantee or warranty given after a contract of service was made;

    c.   Engaging in unfair or deceptive conduct which created a likelihood of confusion or of misunderstanding regarding the availability and protection of underinsured motorist benefits;

    d.   Engaging in unfair or deceptive acts or practices by handling Plaintiff's claim in a way causing the likelihood of confusion or of misunderstanding by unreasonably delaying the determination of the value of Plaintiff's injuries for a period exceeding six months;

    e.   Engaging in unfair or deceptive acts or practices likely to cause confusion or of misunderstanding by requiring Plaintiff to undergo an examination under oath, only after Defendants had sufficient time to review medical records and determine a value of Plaintiff's injuries and damages, creating the misunderstanding in Plaintiff that Defendant placed some value above and beyond the tortfeasor's policy limits;

Case ID: 180201417

    f.  Engaging in unfair or deceptive acts or practices likely to cause confusion by requiring Plaintiff to undergo an examination under oath and answer questions related to damages when the purpose of the examination was allegedly to determine Plaintiff's residence at the time of the collision;

    g.  Failing to effectuate a prompt and fair settlement of Plaintiff's underinsured motorist claim;

    h.  Forcing Plaintiff to institute suit to recover benefits owed to Plaintiff;

    i.  Intentionally and willfully engaging in a course of harassment in order to delay and deny Plaintiff's underinsured motorist claim; and

    j.  Willfully and maliciously acting in bad faith in the handling of Plaintiff's underinsured motorist claim.

107.    Under the UTPCPL, Plaintiff is entitled to compensatory damages, treble damages, counsel fees, and costs of prosecution and hereby makes a claim for the same.

21

**WHEREFORE,** Plaintiff requests the following in a sum greater than fifty thousand dollars ($50,000) each, plus costs and delay damages, and all other appropriate relief, to wit:

    c. Compensatory damages; and

    d. Such other and further relief as appears reasonable and just in accordance with law, including treble damages, counsel fees and court costs.

Respectfully submitted,

2/15/2018
DATE

  /s/ Gabriel Z. Levin
GABRIEL Z. LEVIN
IDENTIFICATION NO: 89128
JAMES T. STINSMAN, ESQUIRE
IDENTIFICATION NO: 312191
LEVIN AND ZEIGER, LLP
1500 JFK BLVD. SUITE 620
PHILADELPHIA, PA 19102
215-825-5183

22

Case ID: 180201417

**Verification**

I, Dominique Ellis state that I am the Plaintiff in this action and verify that the statements made in the foregoing documents are true and correct to the best of my knowledge, information and belief. I also understand that the statements are made subject to the penalties of 18 Pa.C.S.A. §4909, relating to unsworn falsification to authorities.

02/15/2018

Dominique Ellis

# EXHIBIT

# A



Liberty Mutual Insurance
350 E 96ᵗʰ Street
Indianapolis, IN 46240
Telephone: 317-581-6654

June 6, 2017

Clare MacNabb
512 Township Line Road
Suite 300
Blue Bell PA 19422

Insured Name:        Yolanda J Hill
Policy Number:       AOS28849378040
Claim Number:        033174076
Date of Loss:        01/15/2016
Effective Date:      03/22/2015

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy
listed above as maintained by the Liberty Mutual Insurance Group Inc. in the usual and customary course
of its business.

Sincerely,

Kimberly Firszt

Kimberly Firszt
Policy Copy
Support

KF
Enclosures

PL Policy/Dec Request

Case ID: 180201417

# Policy Declarations

## A summary of your auto insurance coverage


**Liberty Mutual.**
INSURANCE

Thank you for renewing with us.
Your declarations are effective as of 03/22/2015.



**INSURANCE INFORMATION**

| | |
|---|---|
| Named Insured: | Yolanda J Hill |
| Policy Number: | AOS-288-493780-40 5 7 |
| Policy Period: | 03/22/2015-03/22/2016 12:01 AM standard time at the address of the Named Insured as stated below. |
| Mailing Address: | 814 Passmore St Philadelphia PA 19111-5331 |
| Affinity Affiliation: | West Chester University Alumni Association |


**ACTION REQUIRED:**

Please review and keep for your records.


**QUESTIONS ABOUT YOUR POLICY?**
By Phone
For Service:
1-800-869-4009
Liberty Mutual
PO Box 52102
Phoenix AZ 85072

To report a claim
1-800-2CLAIMS
(1-800-225-2467)

**VEHICLES COVERED BY YOUR POLICY**

| VEH | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 1 | 2012 | MERCEDES BENZ | ML350 | 4JGDA5HB6CA074602 |
| 2 | 2013 | VOLKSWAGEN | CC | WVWBP7AN7DE509681 |

**COVERAGE DETAILS**

Your total annual policy premium for all covered vehicles is shown below.
A premium is shown for each type of coverage you have purchased for
each vehicle. Where no premium is shown, you have not purchased the
indicated coverage for that vehicle.

THIS POLICY COVERS COLLISION DAMAGE TO RENTAL VEHICLES.

**COVERAGE INFORMATION**



| | |
|---|---|
| Total Annual Policy Premium: | $4,861.00 |

Your discounts and benefits have been applied. Includes state sales tax and local surcharge
where applicable.
THIS IS NOT YOUR AUTO INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.

| COVERAGE | LIMITS | | | PREMIUM PER VEHICLE | |
|---|---|---|---|---|---|
| | | | | VEH 1 | VEH 2 |
| **A. Liability** | | | | | |
| Bodily Injury | $ | 100,000 | Each Person | $487 | $478 |
| | $ | 300,000 | Each Accident | | |
| Property Damage | $ | 50,000 | Each Accident | $412 | $280 |
| Full Tort Option Selected | | | | | |
| **C. Uninsured Motorists** | | | | | |
| Uninsured Motorists | $ | 100,000 | Each Person | $79 | $53 |
| Bodily Injury | $ | 300,000 | Each Accident | | |
| Full Tort Option Selected | | | | | |

AUTO 4210 10 10

Case ID: 180201417

██████████████████

COVERAGE INFORMATION (continued)

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE | |
|---|---|---|---|---|
| | | | VEH 1 | VEH 2 |
| Underinsured Motorists | | | | |
| Underinsured Motorists | $ | 100,000 Each Person | $294 | $198 |
| Bodily Injury | $ | 300,000 Each Accident | | |
| Full Tort Option Selected | | | | |
| D. Coverage for Damage to Your Auto | | | | |
| Collision | | | $684 | $728 |
| Actual Cash Value Less Deductible Shown Veh 1 $500 | | Veh 2 $500 | | |
| Other Than Collision | | | $338 | $204 |
| Actual Cash Value Less Deductible Shown Veh 1 $500 | | Veh 2 $500 | | |
| First Party Benefits | | | | |
| First Party Benefits 5,000 Medical Expense 0 Funeral Expense 0 Income Loss 0 Accidental Death | | | $281 | $274 |
| Full Tort Option Selected | | | | |
| OPTIONAL COVERAGE | | | | |
| Towing And Labor Cost Each Disablement Veh 2 $50 | | | | $5 |
| Auto Loan Coverage | | | $66 | |
| Annual Premium Per Vehicle: | | | $2,641 | $2,220 |

---

| Total Annual Policy Premium: | $4,861.00 |
|---|---|
| Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable. | |

DISCOUNTS AND BENEFITS

Your discounts and benefits have been applied to your Total Annual Policy Premium.

VEHICLE DISCOUNTS

| | VEH 1 | VEH 2 |
|---|---|---|
| Anti-Theft Device Discount | Yes | Yes |
| Vehicle Safety Discount | Yes | Yes |

AUTO 4210 10 10

DISCOUNTS AND BENEFITS (continued)

POLICY DISCOUNTS
- Early Shopper Discount
- Multi-Car Discount
- Newly Independent Discount
- Good Student Discount

POLICY BENEFITS

Accident Forgiveness: Congratulations! Your Policy has earned Accident Forgiveness! If an experienced driver on your policy has an accident, we won't raise your price due to the first accident.

ADDITIONAL INFORMATION FOR VEHICLES COVERED BY YOUR POLICY

| LOSS PAYEE(S) | MONTH/YEAR EXPIRES |
|---|---|
| VEH 1: MERCEDES BENZ FIN CORP | 06/2016 |
| VEH 2: VW CREDIT | 08/2018 |

VEHICLES OWNED BY OTHER THAN THE NAMED INSURED
VEH 1: MERCEDES BENZ FIN CORP

DRIVER INFORMATION

| DRIVER NAME | LICENSE NUMBER | STATE | DATE OF BIRTH |
|---|---|---|---|
| 1. Yolanda J Hill | 19934911 | PA | 10/18/1961 |
| 2. Dominque D Ellis | 29190786 | PA | 11/19/1990 |

To ensure proper coverage, please contact us to add drivers not listed above.

ENDORSEMENTS - CHANGES TO YOUR POLICY

Amendment of Policy Provisions - Pennsylvania AS3692 07 12
Uninsured Motorists Coverage - Pennsylvania (Stacked) AS3689 08 14
Underinsured Motorists Coverage - Pennsylvania (Stacked) AS3691 08 14
Pennsylvania First Party Benefits Coverage Endorsement PP 05 51 11 92
Split Underinsured Motorists Limits Pennsylvania (Stacked) PP 04 18 07 90
Split Uninsured Motorists Limits Pennsylvania (Stacked) PP 04 22 07 90
Auto Loan/Lease Coverage AS2274 06 07
Split Liability Limits PP 03 09 04 86
Additional Insured - Lessor AS1187 11 90
Nuclear, Bio-Chemical & Mold Exclusion Endorsement AS2221 04 05
Towing and Labor Coverage AS2208 02 05
Coverage For Damage To Your Auto Exclusion Endorsement PP 13 01 12 99
Loss Payable Clause PP 03 05 08 86

PENNSYLVANIA MINIMUM QUOTE

The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefits coverages. Any additional coverages or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages.

Case ID: 180204417

PENNSYLVANIA MINIMUM QUOTE (continued)

|  |  |  | VEH 1 | VEH 2 |
|---|---|---|---|---|
| A. Liability |  |  |  |  |
| Bodily Injury | $ 15,000<br>$ 30,000 | Each Person<br>Each Accident | $302 | $303 |
| Property Damage | $ 5,000 | Each Accident | $458 | $316 |
| First Party Benefits<br>$5,000 Medical Benefits<br>$0 Funeral Expense |  |  | $307 | $304 |
| Premium Per Vehicle |  |  | $1,067 | $923 |
| Total Premium: $1,990 |  |  |  |  |

LibertyGuard Auto Policy Declarations provided and underwritten by
LM General Insurance Company, Boston, MA.

This policy, including endorsements
listed above, is countersigned by:

_____
Authorized Representative

_____
President

_____
Secretary



# LibertyGuard Auto Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States and Canada. Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NONASSESSABLE**

Liberty Mutual Insurance Group

AUTO 3075 R1 Ed. 12-89

Case ID: 180201417

**LIBERTYGUARD AUTO POLICY**

**QUICK REFERENCE**

**DECLARATIONS PAGE**

Your Name and Address
Your Auto or Trailer
Policy Period



| Coverages and Amounts of Insurance | Beginning On Page |
|---|---|
| Agreement | 1 |
| Definitions | 1 |
| **PART A - LIABILITY COVERAGE** | |
| Insuring Agreement | 2 |
| Supplementary Payments | 2 |
| Exclusions | 2 |
| Limit of Liability | 3 |
| Out of State Coverage | 3 |
| Financial Responsibility | 3 |
| Other Insurance | 3 |
| **PART B - MEDICAL PAYMENTS COVERAGE** | |
| Insuring Agreement | 3 |
| Exclusions | 3 |
| Limit of Liability | 4 |
| Other Insurance | 4 |
| **PART C - UNINSURED MOTORISTS COVERAGE** | |
| Insuring Agreement | 4 |
| Exclusions | 5 |
| Limit of Liability | 5 |
| Other Insurance | 5 |
| Arbitration | 5 |
| **PART D - COVERAGE FOR DAMAGE TO YOUR AUTO** | |
| Insuring Agreement | 6 |
| Transportation Expenses | 6 |
| Exclusions | 6 |
| Limit of Liability | 8 |
| Payment of Loss | 8 |
| No Benefit to Bailee | 8 |
| Other Sources of Recovery | 8 |
| Appraisal | 8 |
| **PART E - DUTIES AFTER AN ACCIDENT OR LOSS** | |
| General Duties | 8 |
| Additional Duties for Uninsured Motorists Coverage | 8 |
| Additional Duties for Coverage for Damage to Your Auto | 8 |
| **PART F - GENERAL PROVISIONS** | |
| Bankruptcy | 9 |
| Changes | 9 |
| Fraud | 9 |
| Legal Action Against Us | 9 |
| Our Right To Recover Payment | 9 |
| Policy Period And Territory | 9 |
| Termination | 10 |
| Transfer Of Your Interest In This Policy | 10 |
| Two Or More Auto Policies | 11 |
| *MUTUAL POLICY CONDITIONS | 11 |

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

Case ID: 180201417



## AUTO POLICY

### AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

### DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

  1. The "named Insured" shown in the Declarations; and

  2. The spouse if a resident of the same household.

B. "We," "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger auto shall be deemed to be owned by a person if leased:

  1. Under a written agreement to that person; and

  2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks or boldfaced when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. "Occupying" means in, upon, getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:

  1. Private passenger auto; or

  2. Pickup or van.

  It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:

  1. Any vehicle shown in the Declarations.

  2. Any of the following types of vehicles on the date you become the owner:

    a. a private passenger auto; or

    b. a pickup or van that:

    (1) has a Gross Vehicle Weight of less than 10,000 lbs.; and

    (2) is not used for the delivery or transportation of goods and materials unless such use is:

      (a) incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

      (b) for farming or ranching.

  This provision (J.2.) applies only if:

  a. you acquire the vehicle during the policy period;

  b. you ask us to insure it within 30 days after you become the owner; and

  c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

  If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

  If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

  3. Any "trailer" you own.

  4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

    a. breakdown;       d. loss; or

    b. repair;          e. destruction.

    c. servicing;

  This provision (J.4.) does not apply to Coverage for Damage to Your Auto.



## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

2. Any person using "your covered auto."

3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured:"

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $50 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

### EXCLUSIONS

A. We do not provide Liability Coverage for any person:

1. Who intentionally causes "bodily injury" or "property damage."

2. For "property damage" to property owned or being transported by that person.

3. For "property damage" to property:

   a. rented to;

   b. used by; or

   c. in the care of;

   that person.

   This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that person during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a. selling;     d. storing; or

   b. repairing;   e. parking;

   c. servicing;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a. you;

   b. any "family member;" or

   c. any partner, agent or employee of you or any "family member."

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6. This exclusion (A.7.) does not apply to the maintenance or use of a:

   a. private passenger auto;

   b. pickup or van that you own; or

Case ID: 180201417



c. "trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that person is entitled to do so.

9. For "bodily injury" or "property damage" for which that person:
   a. is an insured under a nuclear energy liability policy; or
   b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:
   a. American Nuclear Insurers;
   b. Mutual Atomic Energy Liability Underwriters; or
   c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any motorized vehicle having fewer than four wheels.

2. Any vehicle, other than "your covered auto," which is:
   a. owned by you; or
   b. furnished or available for your regular use.

3. Any vehicle, other than "your covered auto," which is:
   a. owned by any "family member;" or
   b. furnished or available for the regular use of any "family member."

   However, this exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:
   a. owned by a "family member;" or
   b. furnished or available for the regular use of a "family member."

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

B. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

**FINANCIAL RESPONSIBILITY**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

**OTHER INSURANCE**

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

---

**PART B - MEDICAL PAYMENTS COVERAGE**

**INSURING AGREEMENT**

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"

1. Caused by accident; and
2. Sustained by an "insured."

We will pay only those expenses incurred within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member:"
   a. while "occupying;" or
   b. as a pedestrian when struck by;
   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto."

**EXCLUSIONS**

We do not provide Medical Payments Coverage



for any person for "bodily injury:"

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury."

5. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. owned by you; or
   b. furnished or available for your regular use.

6. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. owned by any "family member;" or
   b. furnished or available for the regular use of any "family member."
   However, this exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that person is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:
   a. private passenger auto;
   b. pickup or van that you own; or
   c. "trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:
   a. discharge of a nuclear weapon (even if accidental);
   b. war (declared or undeclared);
   c. civil war;
   d. insurrection; or
   e. rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:
    a. nuclear reaction;
    b. radiation; or
    c. radioactive contamination.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:
   1. "insureds;"
   2. Claims made;
   3. Vehicles or premiums shown in the Declarations; or
   4. Vehicles involved in the accident.

B. Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under Part A or Part C.

C. No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Part A or Part C.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C - UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"

   1. Sustained by an "insured;" and
   2. Caused by an accident.

   The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:
   1. You or any "family member."
   2. Any other person "occupying" "your covered auto."
   3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

Case ID: 180201417



C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

    a. you or any "family member;"

    b. a vehicle which you or any "family member" are "occupying;" or

    c. "your covered auto."

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company;

    a. denies coverage; or

    b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member."

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

1. While "occupying," or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. If that person or the legal representative settles the "bodily injury" claim without our consent.

3. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (A.3.) does

not apply to a share-the-expense car pool.

4. Using a vehicle without a reasonable belief that that person is entitled to do so.

B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

C. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

2. Paid or payable because of the "bodily injury" under any of the following or similar law:

    a. workers' compensation law; or

    b. disability benefits law.

C. Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

## OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages under this Part; or

2. As to the amount of damages;

either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will



select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:
1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and
2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

---

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto," we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision:"

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water or flood
7. Malicious mischief or vandalism;
8. Riot or Civil Commotion;
9. Contact with bird or animal; or
10. Breakage of glass

If breakage of glass is caused by a "collision," you may elect to have it considered a loss caused by "collision."

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any any "family member" while in the custody of or being operated by you or any

"family member;" or
2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:
a. breakdown;
b. repair;
c. servicing;
d. loss; or
e. destruction.

### TRANSPORTATION EXPENSES

In addition we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

1. Transportation expenses incurred by you in the event of the total theft of "your covered auto." This applies only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
2. Loss of use expenses for which you become legally responsible in the event of the total theft of a "non-owned auto." This applies only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto."

We will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and
2. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

### EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

Case ID: 180201417



2. Damage due and confined to:

  a. wear and tear;

  b. freezing;

  c. mechanical or electrical breakdown or failure; or

  d. road damage to tires.

This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto."

3. Loss due to or as a consequence of:

  a. radioactive contamination;

  b. discharge of any nuclear weapon (even if accidental);

  c. war (declared or undeclared);

  d. civil war;

  e. insurrection; or

  f. rebellion or revolution.

4. Loss to:

  a. any electronic equipment designed for the reproduction of sound, including, but not limited to:

    (1) radios and stereos;

    (2) tape decks; or

    (3) compact disc players;

  b. any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:

    (1) citizens band radios;

    (2) telephones;

    (3) two-way mobile radios;

    (4) scanning monitor receivers;

    (5) television monitor receivers;

    (6) video cassette recorders;

    (7) audio cassette recorders; or

    (8) personal computers;

  c. tapes, records, discs, or other media used with equipment described in a. or b.; or

  d. any other accessories used with equipment described in a. or b.

This exclusion (4.) does not apply to:

  a. equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in "your covered auto" or any "non-owned auto;" or

  b. any other electronic equipment that is:

    (1) necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

    (2) an integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto" normally used by the manufacturer for installation of a radio.

5. Loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities because you or any "family member:"

  a. engaged in illegal activities; or

  b. failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto."

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

  a. acquire during the policy period; and

  b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:

  a. awnings or cabanas; or

  b. equipment designed to create additional living facilities.

9. Loss to equipment designed or used for the detection or location of radar.

10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

  a. special carpeting and insulation, furniture or bars;

  b. facilities for cooking and sleeping;

  c. height-extending roofs; or

  d. custom murals, paintings or other decals or graphics.



11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

   a. selling;     d. storing; or

   b. repairing;   e. parking;

   c. servicing;

vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer."

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property.

However, the most we will pay for loss to any "non-owned auto" which is a "trailer" is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto;"

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices

or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   a. to physical exams by physicians we select. We will pay for these exams.

   b. to examination under oath and subscribe the same.

4. Authorize us to obtain:

   a. medical reports; and

   b. other pertinent records.

5. Submit a proof of loss when required by us.

Case ID: 180201417



C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

### OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

### POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and



2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

A. Cancellation. This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. returning this policy to us; or

   b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   a. at least 10 days notice:

   (1) if cancellation is for nonpayment of premium; or

   (2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   b. at least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   a. for nonpayment of premium; or

   b. if your driver's license or that of:

   (1) any driver who lives with you; or

   (2) any driver who customarily uses "your covered auto;"

   has been suspended or revoked. This must have occurred:

   (1) during the policy period; or

   (2) since the last anniversary of the original effective date if the policy period is other than 1 year; or

   c. if the policy was obtained through material misrepresentation.

B. Nonrenewal. If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. If the policy period

is other than 1 year, we will have the right not to renew or continue it only at each anniversary of its original effective date.

C. Automatic Termination. If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

D. Other Termination Provisions.

1. If the law in effect in your state at the time this policy is issued, renewed or continued:

   a. requires a longer notice period;

   b. requires a special form of or procedure for giving notice; or

   c. modifies any of the stated termination reasons;

   we will comply with those requirements.

2. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

3. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with

Case ID: 180201417



respect to the representative's legal responsibility to maintain or use "your covered auto."

B. Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

**\*MUTUAL POLICY CONDITIONS**

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

**PRESIDENT**

**SECRETARY**

Includes Copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1988



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

AMENDMENT OF POLICY PROVISIONS - PENNSYLVANIA         AS 3692 07 12

I. **DEFINITIONS**

The **Definitions** section is amended as follows:

A. The following is added to Definition A.:

3. The partner in a civil union, registered domestic partnership or other similar union, with the "named insured" shown on the Declarations, if a resident of the same household.

The above, only applies if the civil union, registered domestic partnership or other similar union was validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

If the spouse or partner defined above is no longer a resident in the same household during the policy period or prior to the inception of the policy, the spouse or partner will be considered "you" and "your" under this policy until the earlier of:

1. The end of 90 days following the change of residency;

2. The effective date of another policy listing the spouse or partner defined above as a named insured; or

3. The end of the policy period.

B. Definition J.2. is replaced as follows:

2. A "newly acquired auto".

C. The following is added to the Definitions Section:

K. "Newly acquired auto":

1. Newly acquired auto means any of the following types of vehicles you become the owner of during the policy period:

a. A private passenger auto; or

b. A pickup or van, for which no other insurance policy provides coverage, that:

(1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and

(2) Is not used for the delivery or transportation of goods and materials unless such use is:

(a) Incidental to your business of installing, maintaining or repairing furnishings or equipment; or

(b) For farming or ranching.

For this definition to apply to a newly acquired auto, which is in addition to the vehicles listed in the Declarations, we must insure all other vehicles owned by you.

2. Coverage for a newly acquired auto is provided as described below. If you ask us to insure a newly acquired auto after a specified time period described below has elapsed, any coverage we provide for a newly acquired auto will begin at the time you request the coverage.

a. For any coverage provided in this policy except Coverage For Damage To Your Auto, a newly acquired auto will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.

However, for this coverage to apply to a newly acquired auto that is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

If a newly acquired auto replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

b. Collision Coverage for a newly acquired auto begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 30 days after you become the owner if the Declarations

Case ID: 180201417



AS 3692 07 12

indicate that Collision Coverage applies to at least one auto. In this case, the newly acquired auto will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Five days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the newly acquired auto, a Collision deductible of $500 will apply.

c. Other Than Collision Coverage for a newly acquired auto begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 30 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the newly acquired auto will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Five days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the newly acquired auto, an Other Than Collision deductible of $500 will apply.

L. "Noneconomic loss" means pain and suffering and other nonmonetary detriment.

M. "Serious injury" means an injury resulting in death, serious impairment of body function or permanent serious disfigurement.

II. **PART A - LIABILITY COVERAGE**
Part A is amended as follows:

A. Paragraph A. of the Insuring Agreement is replaced by the following:
INSURING AGREEMENT
We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. The following is added to the Supplementary Payments Provisions:
SUPPLEMENTARY PAYMENTS
In addition to our limit of liability we will pay on behalf of an "insured";
6. Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the insured is subject to the applicable Pennsylvania Rules of Civil Procedure.

C. The following is added under paragraph A of the Exclusions section of Part A:
10. For "bodily injury" or "property damage" that results, or may reasonably be expected to result, from the intentional or criminal acts or omissions of an insured.

D. The following is added under paragraph B. of the Exclusions section of Part A:
4. Any vehicle, while being used for:
a. competing in; or
b. practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

III. **PART B - MEDICAL PAYMENTS COVERAGE**
Part B is amended as follows:
The following Exclusion 11. is added under the Exclusions section:
11. Sustained while occupying any vehicle while being used for:
a. competing in; or

Case ID: 180201417



AS 3692 07 12

b. practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

## IV. PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

Part D is amended as follows:

A. Paragraph A. of the Insuring Agreement is replaced by the following:

INSURING AGREEMENT

We will pay for direct and accidental loss to your covered auto or any non-owned auto, including their equipment, subject to Customized Equipment Coverage, minus any applicable deductible shown in the Declarations. If loss to more than one of your covered auto or non-owned auto results from the same collision, only the highest applicable deductible will apply. We will pay for loss to your covered auto caused by:

1. Other than collision only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. Collision only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to non-owned auto we will provide the broadest coverage applicable to any your covered auto shown in the Declarations.

B. The following Customized Equipment Coverage provision is added under Part D:

CUSTOMIZED EQUIPMENT COVERAGE

A. We will pay up to $500 for theft or damage to customized equipment if the loss is caused by:

1. Other than collision only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. Collision only if the Declarations indicate that Collision Coverage is provided for that auto.

Payments shall be reduced by the applicable deductible. However, only one deductible will be applied for any one loss. If you or the owner of a non-owned auto keeps salvaged material, payments will also be reduced by the salvage value. In no way shall this coverage increase the limit of liability for your covered auto or any non-owned auto.

B. "Customized equipment" means any parts, equipment and accessories including devices, extensions, furnishings, fixtures, finishings, and other alterations that:

1. are permanently installed or attached by bolts or brackets;

2. are removable from a housing unit that is permanently installed inside the auto;

3. are permanently bonded to the vehicle by an adhesive or welding procedure; or

4. change the appearance or performance of the vehicle

including but not limited to any additions or alterations to the chassis, engine, exterior or interior of the auto.

This includes but is not limited to ground effects, specialty rims, performance tires, specialty paint or dye, roll bars, running boards, spoilers, special interior or exterior lighting, roof/trunk racks, and high performance engine components. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer are not considered customized equipment.

This also includes any electronic equipment that is not necessary for the normal operation of the auto or the monitoring of the auto's operating system that is used solely for the reproduction of recorded material or used for transmitting or receiving audio, visual or data signals. However, such parts, equipment and accessories that were installed by the automobile manufacturer or

Case ID: 180201417



licensed auto dealer or in a location the automobile manufacturer intended for such equipment, are not considered customized equipment.

C. If you have purchased additional coverage for customized equipment we will pay up to the amount of coverage you have purchased in addition to the $500 limit provided by the policy. This additional coverage must be shown in the Declarations.

D. The most we will pay for parts, equipment and accessories that are:

    a. not installed by the auto manufacturer or dealer and

    b. permanently installed in or upon the auto

is the actual cash value of the vehicle not including such parts, equipment and accessories.

However under no circumstances will we pay more than the limits identified in the declaration.

C. The Transportation Expenses provision is replaced by the following:

**TRANSPORTATION EXPENSES**

We will pay up to $30 per day to a maximum of 30 days for any temporary transportation expenses incurred by you. This applies only in the event of the theft of your covered auto. We will pay only transportation expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when your covered auto is returned to use or we pay for its loss.

D. Exclusion 4. is replaced by the following:

4. We will not pay for loss to equipment that is not permanently installed in or upon your covered auto or any non-owned auto. This consists of any equipment that either is designed for the reproduction of sound or receives or transmits audio, visual or data signals. This includes but is not limited to:

    • radios and stereos; tape

decks; compact disc players and burners; digital video disc (DVD) players and burners; citizens band radios; scanning monitor receivers; television monitor receivers; global positioning system (GPS) receivers and/or components; video cassette players and recorders; audio cassette recorders; or personal computers, which includes laptops, desktops, and personal digital assistants (PDA) or any other handheld device.

All accessories used with the above or similar equipment are also excluded.

E. Exclusions are added as follows:

13. We will not pay for loss to customized equipment in excess of what is provided under Customized Equipment Coverage unless additional coverage has been purchased by endorsement and is shown in the Declarations.

14. We will not pay for loss to tapes, records, discs or other media used with any sound reproducing or other electronic equipment.

15. Loss to your covered auto or any non-owned auto while the car is being used for:

    a. competing in; or

    b. practicing or preparing for

any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

F. Paragraph B of the Limit of Liability provision is replaced by the following:

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss. In this case, the actual cash value consists of the value of the vehicle not including any customized equipment.

Case ID: 180201417



AS 3692 07 12

III. **PART E - DUTIES AFTER AN ACCIDENT OR LOSS**

Part E is replaced by the following:

**DUTIES AFTER AN ACCIDENT OR LOSS**

If an accident or loss occurs, the following must be done for the terms of the policy to apply:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require, within 30 days of our request:

    a. To examinations by physicians we select under terms we require. We will pay for these exams.

    b. To interviews and recorded statements without the need for us to conduct an examination under oath.

    c. To examination under oath and subscribe the same.

4. Authorize us to obtain, within 30 days of our request:

    a. Medical reports; and

    b. Other pertinent records, including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle.

5. Submit a proof of loss when required by us within 30 days of our request.

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage For Damage To Your Auto must also:

1. Take reasonable steps after loss to protect your covered auto or any " non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if your covered auto or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

VI. **PART F - GENERAL PROVISIONS**

Part F is amended as follows:

A. The Fraud provision is replaced by the following:

**FRAUD**

This policy will not provide coverage under any part of this policy for any insured or any other person or entity seeking benefits under this policy (whether before or after a loss) who:

a. conceals or misrepresents any material fact or circumstance,

b. makes false statements or

c. engages in fraudulent conduct,

any of which relate to a loss, an accident, this insurance or the application for this policy.

B. Paragraph B. Section 2. of the Our Right To Recover Payment provision is replaced by the following:

2. Reimburse us to the extent of our payment less reasonable attorney's fees, costs and expenses incurred by that person in our collecting our share of the recovery.

C. Paragraph A. Section 2 and 3. of the Termination provision is replaced by the following:

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

Case ID: 180201417



AS 3692 07 12

a. At least 15 days notice of cancellation:

(1) If notice is effective within the first 60 days this policy is in effect and this is not a renewal or continuation policy;

(2) For nonpayment of premium;

(3) If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or

b. At least 60 days notice if the policy was obtained through material misrepresentation.

Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

D. Paragraph B. of the Termination provision is replaced by the following:

B. Nonrenewal. If we decide not to renew or continue this policy, we will mail to the named insured shown in the Declarations at the address shown in this policy:

1. At least 15 days notice before the end of the policy period:

a. For nonpayment of premium; or

b. If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date.

2. At least 60 days notice before the end of the policy period in all other cases.

However, our right to non-renew the policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

E. Paragraph C. of the Termination provision is replaced by the following:

C. Automatic Termination. If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

F. Paragraph D. of the Termination provision is replaced by the following:

D. Other Termination Provisions.

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

G. The TRANSFER OF YOUR INTEREST IN THIS POLICY is replaced by the following:

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations becomes deceased, coverage will be provided for:

1. the surviving spouse or partner in a civil union, registered domestic partnership or other similar union, if a resident of the same household at the time of death. Coverage applies to the spouse or partner as set forth herein, as if a named insured shown in the declarations; and

Case ID: 180201417



AS 3692 07 12

2. the legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with regard to the representative's legal responsibility to maintain or use your covered auto.

Section 1. only applies if the civil union, registered domestic partnership or other similar union is validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

H. The following provision is added:
CONSTITUTIONALITY CLAUSE  The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the affect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we will have the right to recompute the premium payable for the policy and void or amend the provisions of the policy, subject to the approval of the Insurance Commissioner.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Case ID: 180201417


**Liberty Mutual.**
INSURANCE

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**UNINSURED MOTORISTS COVERAGE - PENNSYLVANIA (STACKED)**          AS 3689 08 14

Part C - Uninsured Motorists Coverage is replaced in its entirety by the following:

### SCHEDULE

| UNINSURED MOTORISTS COVERAGE | | |
|---|---|---|
| Description of Vehicle | Limit of Liability | Premium |
| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ |

**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

No judgment for damages arising out of a suit brought against the owner or operator of an "uninsured motor vehicle" is binding on us unless we:

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

B. "Insured" as used in this endorsement means:

1. You or any "family member".
2. Any other person "occupying" "your covered auto".
3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.
2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:
   a. You or any "family member";

   b. A vehicle which you or any "family member" are "occupying"; or
   c. "Your covered auto".

   If there is no contact with the hit-and-run vehicle, the facts of the accident must be proved.
3. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes:
      (1) Insolvent; or
      (2) Involved in insolvency proceedings.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished for the regular use of you or any "family member".
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.
3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured", as defined in this endorsement, while using, "occupying", or when struck by, any motor vehicle owned by you or a "family member", which is not insured for Uninsured Motorists Coverage under this policy. This includes a trailer of any type used with that vehicle.

Case ID: 180201417



AS 3689 08 14

2. By an "insured", as defined in this endorsement, while using, "occupying", or when struck by, any non-owned motor vehicle that is furnished or made available for your regular use, or the regular use of a "family member", which is not insured for Uninsured Motorists Coverage under this policy. This includes a trailer of any type used with that vehicle.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

1. If that person or the legal representative settles the bodily injury claim without our consent. However, this exclusion (B.1.) does not apply if such settlement does not adversely affect our rights.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that person is entitled to do so.

C. We do not provide Uninsured Motorists Coverage for "noneconomic loss" sustained by any person to whom the limited tort alternative applies, resulting from "bodily injury" caused by an accident involving an "uninsured motor vehicle", unless the "bodily injury" sustained is a "serious injury".

This exclusion (C.) does not apply if that "insured" is injured while "occupying" a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Disability benefits law.

E. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

F. We do not provide Uninsured Motorists Coverage for any person for "bodily injury" or "property damage" that results, or may reasonably be expected to result, from the intentional or criminal acts or omissions of an insured.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Schedule or in the Declarations for Uninsured Motorists Coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

B. If "bodily injury" is sustained in an accident by you or any "family member", our maximum limit of liability for all damages in any such accident is the sum of the limits of liability for Uninsured Motorists Coverage shown in the Schedule or in the Declarations applicable to each vehicle. Subject to this maximum limit of liability for all damages, the most we will pay for "bodily injury" sustained by an "insured" other than you or any "family member" is the limit of liability shown in the Schedule or in the Declarations applicable to the vehicle the "insured" was "occupying" at the time of the accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part B of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

Case ID: 180201417



AS 3689 08 14

1. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable similar insurance available under more than one policy or provision of coverage:

The following priorities of recovery apply:

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**First** The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the accident.

**Second** The policy affording Uninsured Motorists Coverage to the "insured" as a named insured or family member.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**LAWSUITS AGAINST US**

You must comply with the terms of the policy before you may sue us. Suit must be brought in a court of competent jurisdiction in the county and state of your legal domicile at the time of the accident.

**II. PART F - GENERAL PROVISIONS**

The following is added to the Two Or More Auto Policies provision of Part F:

**TWO OR MORE AUTO POLICIES**

1. This provision does not apply to Uninsured Motorists Coverage.

2. No one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorists Coverage.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

Case ID: 180201417



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**UNDERINSURED MOTORISTS COVERAGE - PENNSYLVANIA (STACKED)**    AS 3691 08 14

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

## SCHEDULE

| UNDERINSURED MOTORISTS COVERAGE | | |
|---|---|---|
| Description of Vehicle | Limit of Liability | Premium |
| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ |

**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

We will pay under this coverage only if 1. or 2. below applies:

1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

   a. Have been given prompt written notice of such tentative settlement; and

   b. Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

No judgment for damages arising out of a suit brought against the owner or operator of an "underinsured motor vehicle" is binding on us unless we:

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and

2. Had a reasonable opportunity to protect our interests in the suit.

B. "Insured" as used in this endorsement means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

1. For which liability coverage is provided under Part A of this policy.

2. Operated on rails or crawler treads.

3. Designed mainly for use off public roads while not on public roads.

4. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Underinsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured", as defined in this endorsement, while using, "occupying", or when struck by, any motor vehicle owned by you or a "family member", which is not insured for Underinsured Motorists Coverage under this policy. This includes a trailer of any type used with that vehicle.

Case ID: 180201417



AS 3691 08 14

2. By an "insured", as defined in this endorsement, while using, "occupying", or when struck by, any non-owned motor vehicle that is furnished or made available for your regular use or the regular use of a "family member", which is not insured for Underinsured Motorists Coverage under this policy. This includes a trailer of any type used with that vehicle.

B. We do not provide Underinsured Motorists Coverage for "bodily injury" sustained by any person:

1. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (B.1.) does not apply to a share-the-expense car pool.

2. Using a vehicle without a reasonable belief that that person is entitled to do so.

C. We do not provide Underinsured Motorists Coverage for "noneconomic loss" sustained by any person to whom the limited tort alternative applies, resulting from "bodily injury" caused by an accident involving an "underinsured motor vehicle", unless the "bodily injury" sustained is a "serious injury".

This exclusion (C.) does not apply if that "insured" is injured while "occupying" a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Disability benefits law.

E. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

F. We do not provide Underinsured Motorists Coverage for any person for "bodily injury" or "property damage" that results, or may reasonably be expected to result, from the intentional or criminal acts or omissions of an insured.

## LIMIT OF LIABILITY

A. Except as provided in paragraph B., the limit of liability shown in the Schedule or in the Declarations for Underinsured Motorists Coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums, shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

B. If "bodily injury" is sustained in an accident by you or any "family member", our maximum limit of liability for all damages in any such accident is the sum of the limits of liability for Underinsured Motorists Coverage shown in the Schedule or in the Declarations applicable to each vehicle. Subject to this maximum limit of liability for all damages, the most we will pay for "bodily injury" sustained by an "insured" other than you or any "family member" is the limit of liability shown in the Schedule or in the Declarations applicable to the vehicle the "insured" was "occupying" at the time of the accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

C. The damages payable under this coverage shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid for an "insured's" attorney either directly or as part of the amount paid to the "insured". It also includes all sums paid under Part A of this policy.

D. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B or Part C of this policy.

E. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

Case ID: 180201417



**AS 3691 08 14**

F. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable similar insurance available under more than one policy or provision of coverage:

The following priorities of recovery apply:

First   The Underinsured Motorists Coverage applicable to the vehicle the "insured" was " occupying" at the time of the accident.

Second  The policy affording Underinsured Motorists Coverage to the "insured" as a named insured or family member.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**LAWSUITS AGAINST US**

You must comply with the terms of the policy before you may sue us. Suit must be brought in a court of competent jurisdiction in the county and state of your legal domicile at the time of the accident.

**ADDITIONAL DUTIES**

A person seeking Underinsured Motorists Coverage must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an

amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

**PART F - GENERAL PROVISIONS**

Part F is amended as follows:

A. The following is added to the Our Right To Recover Payment provision:

**OUR RIGHT TO RECOVER PAYMENT**

Our rights do not apply under paragraph A. with respect to Underinsured Motorists Coverage if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

2. We also have a right to recover the advanced payment.

B. The following is added to the Two Or More Auto Policies provision:

**TWO OR MORE AUTO POLICIES**

1. This provision does not apply to Underinsured Motorists Coverage.

2. No one will be entitled to receive duplicate payments for the same elements of loss under Underinsured Motorists Coverage.

*This endorsement must be attached to the Change Endorsement when issued after the policy is written.*

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

Case ID: 180201417



POLICY NUMBER:



## FIRST PARTY BENEFITS COVERAGE - PENNSYLVANIA

**PERSONAL AUTO**
PP 05 51 11 92

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

### SCHEDULE

| BASIC FIRST PARTY BENEFIT | |
|---|---|
| Benefit | Limit Of Liability |
| Medical Expenses | $5,000 |

If indicated below or in the Declarations, the following options apply instead of the Basic First Party Benefit:

☐ **Added First Party Benefits**

| Benefits | Limit Of Liability |
|---|---|
| Medical Expenses | $_____ |
| Work Loss | $_____ subject to a maximum of $_____ per month |
| Funeral Expenses | $_____ |
| Accidental Death | $_____ |

☐ **Combination First Party Benefits**

| Benefits | Limit Of Liability |
|---|---|
| Medical Expenses | No specific dollar amount |
| Work Loss | No specific dollar amount |
| Funeral Expenses | $2,500 |
| Accidental Death | $_____ |
| Maximum Limit of Liability for the Total of All Combination First Party Benefits | $_____ |

Note: If Added First Party Benefits or Combination First Party Benefits are not shown as applicable in the Schedule or Declarations, only the Basic First Party Benefit applies.

## I. DEFINITIONS

The Definitions section is amended as follows:

A. "The Act" refers to the Pennsylvania Motor Vehicle Financial Responsibility Law.

B. The following definitions are replaced:

1. "Bodily injury" means accidental bodily harm to a person and that person's resulting illness, disease or death.

2. "Your covered auto" means a "motor vehicle":

   a. To which Part A of this policy applies and for which a specific premium is charged; and

   b. For which First Party Benefits Coverage required by the Act is maintained.

C. The following definition is added:

"Motor vehicle" means a self-propelled vehicle operated or designed for use upon public roads. However, "motor vehicle" does not include a vehicle operated:

1. By muscular power; or

2. On rails or tracks.

D. "Insured" as used in this endorsement means:

1. You or any "family member".

2. Any other person while:

   a. "Occupying" "your covered auto"; or

   b. Not "occupying" a "motor vehicle" if injured as a result of an accident in Pennsylvania involving "your covered auto".



If "your covered auto" is parked and unoccupied it is not a "motor vehicle" involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

## II. FIRST PARTY BENEFITS COVERAGE

### INSURING AGREEMENT

#### A. BASIC FIRST PARTY BENEFIT

We will pay, in accordance with the Act, the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle".

Subject to the limit shown in the Schedule or Declarations, the Basic First Party Benefit consists of:

Medical expenses. Reasonable and necessary medical expenses incurred for an "insured's":

1. Care;

2. Recovery; or

3. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the accident causing "bodily injury". However, if within 18 months from the date of the accident, it can be determined with reasonable medical probability that additional expenses may be incurred after this period, the 18 month time limit will not apply to the payment of the additional medical expenses.

#### B. ADDED FIRST PARTY BENEFITS

If the Schedule or Declarations indicates that Added First Party Benefits apply, we will pay Added First Party Benefits instead of the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle". These benefits are subject to the provisions of the Act.

Subject to the limits shown in the Schedule or Declarations, Added First Party Benefits consist of the following:

1. Medical expenses as described in the Basic First Party Benefit.

2. Work loss.

a. Loss of income. Up to 80% of gross income actually lost by an "insured" as a result of the accident.

b. Reasonable expenses actually incurred to reduce loss of income by hiring:

(1) Special help, thereby enabling an "insured" to work; or

(2) A substitute to perform the work a self-employed "insured" would have performed.

However, work loss does not include:

a. Loss of expected income or expenses incurred for services performed after the death of an "insured"; or

b. Any loss of income, or expenses incurred for services performed, during the first 5 working days the "insured" did not work due to "bodily injury".

3. Funeral expenses. Funeral or burial expenses actually incurred if "bodily injury" causes an "insured's" death within 24 months from the date of the accident.

4. Accidental death. A death benefit paid if "bodily injury" causes the death of you or any "family member" within 24 months from the date of the accident.

We will pay accidental death to the executor or administrator of the deceased "insured's" estate. If there is no executor or administrator, the benefit shall be paid to:

a. The deceased "insured's" surviving spouse; or

b. If there is no surviving spouse, the deceased "insured's" surviving children; or

c. If there is no surviving spouse or children, to the deceased "insured's" estate.

#### C. COMBINATION FIRST PARTY BENEFITS

If the Schedule or Declarations indicates that Combination First Party Benefits apply, we will pay Combination First Party Benefits instead of the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle". These benefits are subject to the provisions of the Act.

 Copyright, Insurance Services Office, Inc., 1992



Subject to the limits shown in the Schedule or Declarations, Combination First Party Benefits consist of the following, as described in the Basic First Party Benefit and Added First Party Benefits:

1. Medical expenses.

2. Work loss.

3. Funeral expenses.

4. Accidental death.

## EXCLUSIONS

A. We do not provide First Party Benefits Coverage for "bodily injury" sustained by any person:

1. While intentionally causing or attempting to cause "bodily injury" to himself or any other person. We will not pay accidental death on behalf of that person.

2. While committing a felony.

3. While seeking to elude lawful apprehension or arrest by a law enforcement official.

4. While maintaining or using a "motor vehicle" knowingly converted by that person. This exclusion (A.4.) does not apply to:

a. You; or

b. Any "family member".

5. Who, at the time of the accident, is:

a. The owner of one or more registered "motor vehicles", none of which have in effect the financial responsibility required by the Act; or

b. "Occupying" a "motor vehicle" owned by that person for which the financial responsibility required by the Act is not in effect.

6. Maintaining or using a "motor vehicle" while located for use as a residence or premises.

7. While "occupying" a:

a. Recreational vehicle designed for use off public roads; or

b. Motorcycle, moped or similar-type vehicle.

B. We do not provide First Party Benefits Coverage for "bodily injury":

1. Sustained by a pedestrian if the accident occurs outside of Pennsylvania. This exclusion (B.1.) does not apply to:

a. You; or

b. Any "family member".

2. Caused by or as a consequence of:

a. Discharge of a nuclear weapon (even if accidental);

b. War (declared or undeclared);

c. Civil war;

d. Insurrection; or

e. Rebellion or revolution.

3. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

a. Nuclear reaction;

b. Radiation; or

c. Radioactive contamination.

## LIMIT OF LIABILITY

A. The limits of liability shown in the Schedule or Declarations for the first party benefits that apply are the most we will pay to or for each "insured" as the result of any one accident, regardless of the number of:

1. Claims made;

2. Vehicles or premiums shown in the Declarations;

3. Vehicles involved in the accident; or

4. Insurers providing first party benefits.

B. If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the Act for the Basic First Party Benefit. This provision (B.) will not change our maximum limit of liability.

C. Any amounts payable under this coverage shall be excess over any amounts:

1. Paid;

2. Payable; or

3. Required to be provided;

to an "insured" under any workers' compensation law or similar law.

 Copyright, Insurance Services Office, Inc., 1992   Case ID: 180301417



## PRIORITIES OF POLICIES

A. We will pay first party benefits in accordance with the order of priorities set forth by the Act. We will not pay if there is another insurer at a higher level of priority. The **First** category listed below is the highest level of priority and the **Fourth** category is the lowest level of priority. The priority order is:

First     The insurer providing benefits to the "insured" as a named insured.

Second    The insurer providing benefits to the "insured" as a family member who is not a named insured under another policy providing coverage under the Act.

Third     The insurer of the "motor vehicle" which the "insured" is "occupying" at the time of the accident.

Fourth    The insurer of any "motor vehicle" involved in the accident if the "insured" is not:

    a. "Occupying" a "motor vehicle"; and
    b. Provided first party benefits under any other automobile policy.

    An unoccupied parked "motor vehicle" is not a "motor vehicle" involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

B. If 2 or more policies have equal priority within the highest applicable priority level:

1. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is then entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. If such contribution is sought among insurers under the **Fourth** priority, proration shall be based on the number of involved motor vehicles.

2. If we are the insurer against whom the claim is first made, our payment to or for an "insured" will not exceed the applicable limit of liability for First Party Benefits Coverage shown in the Schedule or Declarations.

3. The maximum recovery under all policies will not exceed the amount payable under the policy with the highest limit of liability.

### NON-DUPLICATION OF BENEFITS

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar insurance including self-insurance.

### III. PART F - GENERAL PROVISIONS

Part F is amended as follows:

The Our Right To Recover Payment provision does not apply.

*This endorsement must be attached to the Change Endorsement when issued after the policy is written.*

 Copyright, Insurance Services Office, Inc., 1992     Case ID: 180503020417



## LIMITED TORT ALTERNATIVE INFORMATION NOTICE - PENNSYLVANIA

AS 2108 04 99
(PP 03 38 07 90)

Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for noneconomic loss, except that:

A.  An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

1.  Is convicted, or accepts Accelerated Rehabilitative Deposition for driving under the influence of alcohol or a controlled substance in that accident;

2.  Is operating a motor vehicle registered in another state;

3.  Intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury if the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person; or

4.  Has not maintained financial responsibility as required by the Pennsylvania Motor Vehicle Financial Responsibility Law, provided that nothing in Paragraphs 1. through 4. shall affect the limitation of a person, precluded from maintaining an action for noneconomic damages under the limited tort alternative, to recover noneconomic damages under Uninsured Motorists Coverage or Underinsured Motorists Coverage.

B.  An individual otherwise bound by the limited tort election shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.

C.  An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1999

Case ID: 180201417



**SPLIT UNDERINSURED MOTORISTS LIMITS - PENNSYLVANIA (STACKED)**

PERSONAL AUTO
PP 04 18 07 90

### SCHEDULE

| Auto Premium | Limits | |
|---|---|---|
| 1. $_____ | $_____ each person | $_____ each accident |
| 2. $_____ | $_____ each person | $_____ each accident |
| 3. $_____ | $_____ each person | $_____ each accident |

Paragraphs A. and B. of the Limit of Liability provision in the Underinsured Motorists Coverage - Pennsylvania (Stacked) endorsement are replaced by the following:

**LIMIT OF LIABILITY**

A. If "bodily injury" is sustained in an accident by you or any "family member":

1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any such accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage.

2. Subject to the maximum limit for each person described in A.1. above, our maximum limit of liability for all damages arising out of "bodily injury" resulting from any one accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage.

3. Subject to the maximum limits of liability set forth in A.1 and A.2. above, the most we will pay for "bodily injury" sustained in such accident by an "insured" other than you or any "family member" is the each person or each accident limit of liability shown in the Schedule or in the Declarations applicable to the vehicle that the "insured" was "occupying" at the time of the accident.

The maximum limit of liability is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

B. If "bodily injury" is sustained by any "insured" other than you or any "family member" in an accident in which neither you nor any "family member" sustain "bodily injury," the limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1990

Case ID: P80201417



**SPLIT UNINSURED MOTORISTS LIMITS - PENNSYLVANIA (STACKED)**    PP 04 22 07 90

**SCHEDULE**

| Auto Premium | Limits | | |
|---|---|---|---|
| 1.   $_____ | $_____ each person | $_____ each accident | |
| 2.   $_____ | $_____ each person | $_____ each accident | |
| 3.   $_____ | $_____ each person | $_____ each accident | |

Paragraphs A. and B. of the Limit of Liability provision in the Uninsured Motorists Coverage - Pennsylvania (Stacked) endorsement are replaced by the following:

**LIMIT OF LIABILITY**

A. If "bodily injury" is sustained in an accident by you or any "family member":

1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any such accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage.

2. Subject to the maximum limit for each person described in A.1. above, our maximum limit of liability for all damages arising out of "bodily injury" resulting from any one accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage.

3. Subject to the maximum limits of liability set forth in A.1. and A.2. above, the most we will pay for "bodily injury" sustained in such accident by an "insured" other than you or any "family member" is the each person or each accident limit of liability shown in the Schedule or in the Declarations applicable to the vehicle that the "insured" was "occupying" at the time of the accident.

The maximum limit of liability is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Schedule or in the Declarations; or
4. Vehicles involved in the accident.

B. If "bodily injury" is sustained by any "insured" other than you or any "family member" in an accident in which neither you nor any "family member" sustain "bodily injury," the limit of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Schedule or in the Declarations; or
4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1990

Case ID: 080201417

POLICY NUMBER:



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

PERSONAL AUTO
AS 2274 06 07
(PP 03 35 09 93)

**AUTO LOAN/LEASE COVERAGE**

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

Schedule

| Description of Your Covered Auto(s) | Other Than Collision Additional Premium | Collision Additional Premium |
|---|---|---|
| | $ | $ |
| | $ | $ |
| | $ | $ |

In the event of a covered total loss to a "your covered auto" shown in the Schedule or in the Declarations for which a specific premium charge indicates that Auto Loan/Lease Coverage applies, we will pay any unpaid amount due on the lease or loan for "your covered auto" less:

1. The amount paid under Part D of the policy; and
2. Any:
   a. Overdue lease/loan payments at the time of the loss;
   b. Financial penalties imposed under a lease for excessive use, abnormal wear and tear or high mileage;
   c. Security deposits not refunded by a lessor;
   d. Costs for extended warranties, Credit Life insurance, Health, Accident or Disability insurance purchased with the loan or lease; and
   e. Carry-over balances from previous loans or leases.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1993

Case ID: 180200417



## SPLIT LIABILITY LIMITS

PP 03 09 04 86

### SCHEDULE

| | | |
|---|---|---|
| Bodily Injury Liability | $_____ | each person |
| | $_____ | each accident |
| Property Damage Liability | $_____ | each accident |

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

### LIMIT OF LIABILITY

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1985

Case ID: 180201417



## ADDITIONAL INSURED - LESSOR

AS 1187 11 90
(PP 03 19 08 86)

### SCHEDULE

Additional Insured (Lessor)*

* The Lessor as listed in the lease agreement on file with the Company.

Description of "your leased auto":

Any liability and any required no-fault coverages afforded by this policy for "your leased auto" also apply to the lessor named in this endorsement as an additional insured. This insurance is subject to the following additional provisions:

1. We will pay damages for which the lessor becomes legally responsible only if the damages arise out of acts or omissions of:

    (a) you or any "family member," or

    (b) any other person except the lessor or any employee or agent of the lessor using "your leased auto."

2. "Your leased auto" means:

    (a) an auto shown in the Declarations or in this endorsement which you lease for a continuous period of at least six months under a written agreement which requires you to provide primary insurance for the lessor, and

    (b) any substitute or replacement auto furnished by the lessor named in this endorsement.

3. If we terminate this policy, notice will also be mailed to the lessor.

4. The lessor is not responsible for payment of premiums.

5. The designation of the lessor as an additional insured shall not operate to increase our limits of liability.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1986

Case ID: 180201417



**NUCLEAR, BIOLOGICAL, CHEMICAL & MOLD EXCLUSION ENDORSEMENT**          AS 2221 04 05

## THIS EXCLUSION APPLIES TO <u>ALL COVERAGES</u> PROVIDED BY THIS POLICY INCLUDING ANY AND ALL ENDORSEMENTS

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

Aside from such losses caused by terrorism activities, we do not provide coverage for loss, damage, injury, liability, cost or expense, due to or as a consequence of, whether controlled or uncontrolled or however caused:

    a.  Nuclear exposure, reaction or explosion including resulting fire, smoke, radiation or contamination; and/or

    b.  Biological or chemical attack or exposure to biological or chemical agents, or combination of such agents, including resulting contamination or pollution.

We do not provide coverage for loss, damage, injury, liability, cost or expense arising out of or aggravated by, in whole or in part, "mold, fungus, wet rot, dry rot, bacteria or virus."

"Mold, fungus, wet rot, dry rot, bacteria or virus" means any type or form of fungus, rot, virus or bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or virus.

AS 2221 04 05                                 © 2003 Liberty Mutual Insurance Company



## TOWING AND LABOR COVERAGE
AS 2208 02 05

We will pay for emergency roadside assistance charges incurred each time "your covered auto" or any "non-owned auto" is disabled. This includes:

1. necessary towing charges when you call Liberty Mutual Roadside Assistance and allow us to make arrangements for the tow to the nearest repair facility from the place of disablement;

2. towing charges up to the amount shown on the policy Declarations Page when you either

   a) arrange for the tow; or

   b) request a tow to a repair facility other than the nearest repair facility from the place of disablement; or

3. when a tow is not required, labor charges incurred at the place of disablement, not to exceed the amount shown on the policy Declarations Page.

The nearest repair facility is determined by Liberty Mutual.

This coverage must be shown in the Declarations for the specific disabled vehicle which has this coverage.

If a "non-owned auto" is disabled, we will provide the coverage listed above only if you have purchased Towing and Labor Coverage for at least one "your covered auto" and it is shown in the Declarations.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

AS 2208 02 05          Liberty Mutual Insurance Group                    Page 1 of 1





THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

PERSONAL AUTO
PP 13 01 12 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I. Definitions**

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II. Part D - Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

  Copyright, Insurance Services Office, Inc., 1999

Case ID: 180201417



## LOSS PAYABLE CLAUSE

**PP 03 05 08 86**

Loss Payee: _____

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations or in this endorsement. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto." However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 05 08 86                    Copyright, Insurance Services Office, Inc., 1986

# EXHIBIT

# B

Case ID: 180201417



 **CONTACT US**

**By Phone**
Direct   (267) 462-3028
Toll Free: (800) 362-5698
Ext.     72187
Fax:     (603) 422-0103
**By E-mail**
clare.macnabb@
libertymutual.com

**LM General Insurance Company**
PO Box 7230
London, KY 40742-9732

**Visit us online**
LibertyMutual.com

March 17, 2017

Levin & Zeiger
1500 John F Kennedy Blvd Ste 620
Philadelphia PA 19102-1744

ATTN Dominique De Simone, Esquire

Insured:          Yolanda J. Hill
Claimant:         Dominque D. Ellis
Claim Number:     LA000-033174076-04
Date of Loss:     01/15/2016
Policy Number:    AOS-288-493780-40

Dear Ms. Desimone,

This is to acknowledge receipt of your representation of Dominique Ellis for an underinsured motorist claim, per the above caption.

Under the provisions of the policy you and your client are obligated to protect our subrogation interests in this matter as well as cooperate with our investigation of this claim. As part of our investigation we request that you have your client complete and return the Proof of Claim For Benefits For Injuries and Property Damage Caused by Uninsured and Underinsured, and the enclosed authorizations for health and employer information.

In order for us to consider providing our consent to settle with the tortfeasor, we ask that you provide confirmation of the tortfeasor's policy limits via a declaration sheet, a letter from the tortfeasor's carrier verifying that they are tendering their policy limits, a copy of the proposed release, and an affidavit from the tortfeasor confirming her has no additional coverage applicable to this loss.

Please send the deposition transcripts of Dominque Ellis and Timothy Murray from the third party claim, any medical records that you have in your possession and your permission to review the PIP file.

Sincerely,
Clare Macnabb
Claims Department

Case ID: 180201417



 CONTACT US

**By Phone**
Direct:   (267) 462-3028
Toll Free: (800) 382-5698
Ext.       72187
Fax:       (803) 422-0103

**By E-mail**
clare.macnabb@
libertymutual.com

**LM General Insurance Company**
PO Box 7230
London, KY 40742-8732

**Visit us online**
LibertyMutual.com

**About Claims Process**
Libertymutual.com/claims-
insurance/about-claims-process

**Mobile**
Scan QR Code with your
iPhone or Android
smartphone to download
the claims app or download
a free reader app at
www.i-nigma.mobi



March 17, 2017

Levin & Zeiger
1500 John F Kennedy Blvd Ste 620
Philadelphia PA 19102-1744

ATTN Dominique Desimone

| | |
|---|---|
| Insured: | Yolanda J. Hill |
| Claim Number: | LA000-033174076-04 |
| Date of Loss: | 01/15/2016 |

Dear Mr. Desimone,

Liberty Mutual Insurance appreciates the opportunity to be of service
to you. Our goal is to provide you with exceptional customer service.
We are writing you today to acknowledge your claim for damages
sustained in the accident referenced above.

**Documentation Requested**

At this time, we are investigating the circumstances surrounding the
accident and request that you complete and return the *proof of claim
for benefits for injuries and property damage caused by uninsured and
underinsured form* and send us any documentation you may have,
such as receipts for medical treatment and estimate or repair bills, that
supports the damages claimed, in the enclosed envelope.

**Questions?**

If you have any questions, please feel free to contact me at your
convenience.

Thank you again for choosing to insure with Liberty Mutual. I
appreciate your cooperation and will be getting in touch with you
shortly to discuss your claim further.

Sincerely,
Clare Macnabb
Claims Department

Enclosure



ASC123

Case ID: 180201417

# EXHIBIT

# C

Case ID: 180201417



 **CONTACT US**

By Phone
Direct:    (287) 482-3028
Toll Free: (800) 225-2467
Ext.    72187
Fax:    (603) 422-0103

By E-mail
clara.macnabb@
libertymutual.com

LM General Insurance Company
PO Box 515097
Los Angeles, CA 90051-5097

Visit us online
LibertyMutual.com

April 12, 2017

Levin & Zeiger
1500 John F Kennedy Blvd Ste 620
Philadelphia PA 19102-1744

ATTN Gabriel Z. Levin, Esquire

Insured:         Yolanda J. Hill
Claimant:        Dominque D. Ellis
Claim Number:    LA000-033174078-04
Date of Loss:    01/15/2016
Policy Number:   AOS-288-493780-40

Dear Mr. Levin,

Please be advised that we have waived our subrogation rights against
Timothy Murray for this loss. We have no objection to your client completing
a release for GEICO. We will be taking credit for the tortfeasor's full
$100,000 bodily injury liability limits in the Underinsured Motorist claim.

Please forward copies of all the third party deposition transcripts and any
medical records that you have in your possession. We also request your
permission to review the PIP file.

Sincerely,
Clara Macnabb
Claims Department

Case ID: 180201417

# EXHIBIT

# D

Case ID: 180201417

 **Liberty Mutual™**

LM General Insurance Company
Liberty Mutual Bodily Injury
PO Box 515097
Los Angeles, CA 90051
Tel 267-462-3028
Fax (603) 422-0103

## CERTIFIED MAIL - RETURN RECEIPT REQUESTED AND REGULAR MAIL

June 6, 2017

Dominique Ellis
C/O Levin & Zeiger,
Attorneys At Law
1500 JFK Blvd
Suite 620
Philadelphia, PA 19102
Attention: Gabriel Levin, Esquire

RE:      Named Insured:        Yolanda Hill
         Policy number:        AOS28849378040
         Claim No.             0233174076-04
         Claimant:             Dominique Ellis
         Date of Loss:         01/15/2016

Dear Ms. Ellis:

We acknowledge receipt of an Underinsured Motorist claim being presented as a result of an accident occurring on January 15, 2016 at 8200 Henry Ave., Philadelphia, PA.

We must advise you that the policy may not afford you the legal protection of coverage that you assumed when the claim was reported. We are continuing to investigate all of the circumstances surrounding this claim but must advise you that this investigation should not be construed by you to mean that we agree that the coverage under policy A0S28849378040 is applicable to this accident.

We are making this reservation of rights because our investigation to date indicates that you had an apartment at 8200 Henry Avenue, Philadelphia, PA.

Please refer to **UNDERINSURED MOTORISTS COVERAGE-PENNSYLVANIA ( STACKED)** endorsement **AS 3691 08 14** on the policy at the time of this loss:

Case ID: 180201417

"INSURING AGREEMENT

    A. We will pay compensatory damages which
       an "insured" is legally entitled to recover
       from the owner or operator of an
       "underinsured motor vehicle" because of
       "bodily injury":
       1. Sustained by an "insured"; and..."

    B. "insured" as used in this endorsement
       means:
       1. You or any "family member"

LibertyGuard Auto Policy DEFINITIONS page 1

F. "Family member" means a person related to you by
blood, marriage or adoption who is a resident of your
household. This includes a ward or foster child."

We are continuing to investigate the various aspects of this claim, but with a full
reservation of our obligation to you under your policy. We will advise you, as soon as
our investigation of the facts is complete, on what coverage will or will not be provided.

Liberty Mutual Insurance Company does not intend by this letter to waive any policy
provisions or defenses and specifically reserves its rights to assert such additional policy
defenses at any time.

We also recognize that any rights or claims that you may have under your policy are not
waived by this letter.

Enclosed please find a certified copy of the policy.

Sincerely,

Clare MacNabb
Sr. Claim Resolution Specialist II

Case ID: 180201417

# EXHIBIT

# E

Case ID: 180201417

From: Maher, Daniel Daniel.Maher@LibertyMutual.com 
Subject: RE: Ellis
Date: November 30, 2017 at 2:59 PM
To: Gabriel Levin Levin@levininjuryfirm.com

Gabe, they are extending UIM coverage in this case. Clare will be in touch next week to discuss.

> From: Gabriel Levin [mailto:Levin@levininjuryfirm.com]
> Sent: Wednesday, November 29, 2017 9:56 AM
> To: Maher, Daniel <Daniel.Maher@LibertyMutual.com>
> Subject: Re: Ellis
>
> Dan, this is getting a little ridiculous.  Why would my client have kept her credit card bills from years ago?  As for her drivers license, I thought we already provided that.  Is Liberty Mutual taking the position that my client fraudulently filed the wrong address on multiple tax returns so she could collect on an insurance policy for an accident she did not know was going to occur?  I know I don't have to remind you that Liberty Mutual is obligated to act in good faith and has a duty to not treat Ms. Ellis as an adversary.  If Liberty Mutual does not want to extend coverage I will proceed with litigation and pursue every remedy available to Ms. Ellis including a claim for bad faith and punitive damages.  If you would like to discuss the matter feel free to call me at any time.  I will proceed with litigation if the matter of coverage is not resolved by this Friday.
>
>
> Gabriel Z. Levin, Esquire
> The Levin Firm
> Two Penn Center
> 1500 John F. Kennedy Blvd
> Suite 620
> Philadelphia, PA 19102
> Phone 215.825.5183
> Fax 215.279.8702
> www.levininjuryfirm.com





On Nov 28, 2017, at 5:03 PM, Maher, Daniel
<Daniel.Maher@LibertyMutual.com> wrote:

Gabe, Clare is looking for a copy of her driver's license from the
DOA and if you have any credit card bills to see where they were
going at the time of the ax. Thanks

From: Gabriel Levin [mailto:levin@levininjuryfirm.com]
Sent: Monday, November 27, 2017 5:59 PM
To: Maher, Daniel <Daniel.Maher@LibertyMutual.com>
Subject: Re: Ellis

Ok, thanks. Talk to you tomorrow

Gabriel Levin, Esquire
The Levin Firm
1500 John F. Kennedy Blvd
Two Penn Center
Suite 620
Philadelphia, PA 19102
215.825.5183
215.279.8702 Fax
www.levininjuryfirm.com

On Nov 27, 2017, at 4:47 PM, Maher, Daniel
<Daniel.Maher@LibertyMutual.com> wrote:

Gabe, the adjuster was out last week. We are
supposed to talk tomorrow and one of us will give
you a call. Thanks for your patience

Daniel J. Maher, Esquire
Styliades Mezzanotte and Hasson
Employees of Liberty Mutual Insurance Group
Suite 1650

Case ID: 180201417

520 Walnut St.
Philadelphia Pa. 19106
Office 215 446 8158
Cell 215 435 4193
Email Daniel.Maher@Libertymutual.com
Fax 603 334 7294

Please be advised this office is now a paperless
environment.
As such, we prefer to communicate via e-mail
and/or fax.
Please forward all discovery requests, discovery
responses and motions
to: PhiladelphiaLegalMail@LibertyMutual.com or
via fax to: (603)334-7294

# EXHIBIT

# F

Case ID: 180201417



 CONTACT US

**By Phone**
Direct:   (267) 482-3028
Toll Free: (800) 225-2467
Ext.      72187
Fax:      (603) 422-0103

**By E-mail**
clare.macnabb@
libertymutual.com

**LM General Insurance Company**
P.O. Box 515097
Los Angeles, CA 90051-5097

**Visit us online**
LibertyMutual.com

December 07, 2017

Levin & Zeiger
1500 John F Kennedy Blvd Ste 620
Philadelphia PA 19102-1744

ATTN Gabriel Levin, Esquire

| | |
|---|---|
| Insured: | Yolanda J. Hill |
| Claimant: | Dominque D. Ellis |
| Claim Number: | LA000-033174076-04 |
| Date of Loss: | 01/15/2016 |
| Policy Number: | AOS-288-493780-40 |

Dear Mr. Levin,

This letter is to confirm our conversation today. I have completed the evaluation of your client's Underinsured Motorist claim. With the information that I have to date, I do not have the value of the claim over the tortfeasor's limits. Therefore, I will not be able to make any offer under the Underinsured Motorist coverage.

Sincerely,
Clare Macnabb
Claims Department

